[No. S125677. June 26, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SHAWN TOWNE, Defendant and Appellant.

66

## COUNSEL

Suzan E. Hier, under appointment by the Supreme Court, for Defendant and Appellant.

John T. Philipsborn and Charles D. Weisselberg for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster, Lawrence M. Daniels, Kristofer Jorstad and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—Defendant Shawn Towne was charged with multiple offenses ranging from kidnapping and robbery to "joyriding," but was convicted of only the last offense. He contends that imposition of the upper term sentence on that offense violated his Sixth Amendment right to a jury trial on facts that were used to increase his sentence above the statutory maximum, as that right has been interpreted in *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*). We conclude the aggravating circumstance that a defendant served a prior prison term or was on probation or parole at the time the crime was committed may

be determined by a judge and need not be decided by a jury. In addition, the aggravating circumstance that a defendant's prior performance on probation or parole was unsatisfactory may be determined by a judge, so long as that determination is based upon the defendant's record of one or more prior convictions.

Defendant also contends that in imposing sentence, the trial court is prohibited by federal constitutional principles and state law from making findings of fact that are inconsistent with the jury's verdict acquitting the defendant on other counts. We conclude that because facts considered by the court in selecting the appropriate sentence within the available sentencing range need not be proved beyond a reasonable doubt, a trial court, in this setting, is not prohibited from considering evidence underlying charges of which a defendant has been acquitted.

## I.

In the very early morning hours of April 1, 2002, defendant was engaged in male prostitution activity. Noe Arana picked him up on a street corner in Hollywood. Arana testified that he stopped at two hotels to which he was directed by defendant, but the two men did not check into either one. After driving for some time, Arana decided to head toward the San Fernando Valley to find a room, because he was more familiar with that area. During the drive, defendant fell asleep. Arana drove to an area off the freeway, where he stopped the car and tapped defendant on the shoulder. Arana testified defendant "just went crazy" after being awakened, and began hitting him. The two men struggled, eventually falling to the ground outside the car. Arana testified he was frightened and got into the driver's seat of the car to escape, but defendant removed the keys from the ignition. Defendant told Arana he intended to tie him up and take his car. Defendant then bound Arana's hands and got into the driver's seat.

Defendant drove with Arana, stopped several times, made phone calls, and searched through the car. According to Arana, defendant demanded money and took Arana's wallet. Arana gave defendant the personal identification numbers for his credit cards, which were in the wallet. Eventually defendant stopped at a convenience store and left the vehicle to use an automatic teller machine. Defendant told Arana not to move or he would kill him. Arana took the threat seriously and was frightened, but he managed to untie his hands and fled. He ran to a nearby condominium complex where he knocked on doors, telling residents that he had been kidnapped, his car had been stolen, and they should summon the police. One of the residents testified at trial that when Arana came to her door, he appeared to be frantic and terrified for his life. She called 911 at his request.

Later, about 10:15 a.m., a Los Angeles police officer responded to a stolen vehicle tracking system alert and pulled over Arana's vehicle. Defendant exited from the vehicle, put his hands in the air, and said, "This car is stolen. I had nothing to do with it, but my friend stole it." After police officers took defendant into custody, he stated: "This car is a friend's. I'm going to meet him right now in the valley. Some guy beat me up this morning in the car in Orange County, and I'm going to the nearest police station to report that some guy beat me up. I'm the victim here." Arana's sunglasses, wallet, and jacket were missing from his car.

Defendant testified in his own defense. Consistent with Arana's version of the events, he testified that as they drove and looked for a room, he fell asleep in Arana's car. According to defendant, however, when he awakened Arana was on top of him, strangling him with a cell phone recharger cord. When the fight ended, defendant tried to call 911 on his cell phone but the call did not go through. Defendant testified that Arana promised not to "try anything stupid" and offered to let defendant tie his hands. Arana sat in the car and put his hands out the window so that defendant could tie them. Defendant testified that Arana apologized and said he did not intend to kill defendant. Defendant drove, making several stops, and untied Arana's hands before going into a store to buy drinks for both of them. Defendant asserted that Arana offered to pay him $400 not to report the incident to the police and gave him his credit cards with the personal identification numbers. Defendant went into the convenience store to use the automatic teller machine. When he looked back, he saw that Arana no longer was in the car. Defendant eventually drove the car home. Thereafter, he telephoned the registered owner of the car and was in the process of driving it back to the valley to return it when he was arrested.

Defendant was charged with carjacking (Pen. Code, § 215, subd. (a)),[1] kidnapping (§ 207, subd. (a)), second degree robbery (§ 211), grand theft of an automobile (§ 487, subd. (d)), making criminal threats (§ 422), kidnapping to commit carjacking (§ 209.5, subd. (a)), kidnapping to commit robbery (§ 209, subd. (b)(1)), and "joyriding" (Veh. Code, § 10851, subd. (a)). The information alleged that defendant previously had been convicted of violating Vehicle Code section 10851, making him subject to increased punishment on the grand theft and joyriding charges. (Veh. Code, § 10851, subd. (e); Pen. Code, § 666.5, subd. (a).) The information also alleged, as to all counts, that defendant had three prior felony convictions, making him ineligible for probation (§ 1203, subd. (e)(4)); that defendant had three prior convictions for which he had served a prison term and had failed to remain free of custody or of another felony conviction for five years following those terms, making him subject to a sentence enhancement of one year for each separate

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise noted.

prison term previously served (§ 667.5, subd. (b)); that defendant previously had been convicted of robbery, a serious felony, making him subject to a five-year sentence enhancement on any current serious felony conviction (§ 667, subd. (a)(1)); and that defendant previously had been convicted of robbery, a serious felony within the meaning of the "Three Strikes" law, subjecting him to a doubling of any determinate term imposed for a current felony conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).

The jury acquitted defendant on the first seven counts and found him guilty only on count 8, felony joyriding in violation of Vehicle Code section 10851, subdivision (a). Defendant waived his right to a jury trial on the special allegations and admitted all the alleged prior convictions, including two that resulted in separate prison terms.

The punishment prescribed for a person convicted of violating Vehicle Code section 10851 who previously has been convicted of a felony violation of that section is two, three, or four years. (Veh. Code, § 10851, subd. (e); Pen. Code, § 666.5, subd. (a).) The probation report recommended the high term based upon the absence of any mitigating factors and the presence of the following five aggravating factors:

(1) Defendant had engaged in a pattern of violent conduct, indicating he posed a serious danger to society. (Cal. Rules of Court, rule 4.421(b)(1).)

(2) Defendant had served prior prison terms. (Cal. Rules of Court, rule 4.421(b)(3).)

(3) Defendant's prior performance on probation or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(b)(5).)

(4) Defendant's prior convictions as an adult were numerous and of increasing seriousness. (Cal. Rules of Court, rule 4.421(b)(2).)

(5) Defendant was on parole when the crime was committed. (Cal. Rules of Court, rule 4.421(b)(4).)

The court sentenced defendant to four years in state prison, the upper term for a violation of Vehicle Code section 10851 for a person with a prior conviction for the same offense, a term that was doubled under the Three Strikes law because of defendant's prior robbery conviction, for a total term of eight years. The court selected the upper term based upon (1) its conclusion that the crime itself was aggravated because the victim was afraid for his life, and (2) defendant's lengthy criminal history. The court noted it believed that both defendant and the victim had testified falsely on some

matters, but it was convinced, based upon the testimony of other witnesses, that the victim had been terrified.

In the Court of Appeal defendant argued, among other points, that the trial court abused its discretion in imposing the upper term based upon factual findings by the court that conflicted with the jury's findings. Specifically, the trial court found that the victim had been afraid for his life, which defendant argued was inconsistent with the jury's decision to acquit on all counts that involved force or violence—namely, kidnapping, assault, and carjacking. The Court of Appeal rejected defendant's argument, concluding that the trial court's findings were not inconsistent with the jury's verdict and that—even if there was error—any error was harmless, because the trial court also relied upon the proper aggravating factor of defendant's criminal history. We granted review.

## II.

█ While defendant's case was pending in this court, the United States Supreme Court held in *Cunningham, supra,* 549 U.S. 270, that California's determinate sentencing law (DSL) violated a defendant's right to a jury trial to the extent it permitted a judge to impose an upper term sentence in the absence of an aggravating factor established by the jury's verdict, the defendant's admissions, or the defendant's prior conviction. In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), the United States Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Subsequently, in *Blakely v. Washington,* the high court clarified that the "prescribed statutory maximum" for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakely v. Washington* (2004) 542 U.S. 296, 303 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).) As thereafter explained in *Cunningham,* "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham, supra,* 549 U.S. at p. 281 [127 S.Ct. at pp. 863–864].)

In *Cunningham,* the high court overruled our prior decision in *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*), which had upheld the California DSL against a Sixth Amendment challenge. The high court noted that under the California DSL, an upper term sentence could be imposed only if the trial judge found an aggravating circumstance,

and that an element of the offense established by the jury's verdict does not qualify as an aggravating circumstance. "Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with *Blakely*, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." (*Cunningham, supra,* 549 U.S. at p. 288 [127 S.Ct. at p. 868]; see § 1170, subd. (b).)[2]

■ Applying *Cunningham* in *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black II*), we decided two issues that control the outcome of defendant's Sixth Amendment claim. First, we held in *Black II* that if a single aggravating factor has been established in a manner consistent with *Blakely* and *Cunningham*—by the jury's verdict, the defendant's admissions, or the fact of a prior conviction—the imposition by the trial court of the upper term does not violate the defendant's Sixth Amendment right to a jury trial, regardless of whether the trial court considered other aggravating circumstances in deciding to impose the upper term. "[S]o long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Black II, supra,* 41 Cal.4th at p. 813.)

Second, we held that the right to a jury trial does not apply to the determination of the aggravating circumstance that "[t]he defendant's prior convictions . . . are numerous or of increasing seriousness." (Cal. Rules of Court, rule 4.421(b)(2); see *Black II, supra,* 41 Cal.4th at pp. 818–820.) The decisions of the United States Supreme Court that culminated in *Cunningham* consistently have acknowledged that the right to a jury trial does not apply to the fact of a prior conviction. (*Cunningham, supra,* 549 U.S. at pp. 288–289 [127 S.Ct. at p. 868]; *Blakely, supra,* 542 U.S. at p. 301; *Apprendi, supra,* 530 U.S. at p. 490; *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*).) "[R]ecidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." (*Almendarez-Torres, supra,* 523 U.S. at p. 243.) We concluded in *Black II* that the so-called *Almendarez-Torres* exception for the fact of a prior conviction permits the trial court to decide

---

[2] In response to *Cunningham*, our Legislature amended the DSL, effective March 30, 2007. (Stats. 2007, ch. 3.) References to section 1170 are to the law as it read prior to those amendments unless otherwise noted.

In response to the Legislature's amendment of the DSL, the Judicial Council amended the sentencing rules, effective May 23, 2007. References to the California Rules of Court are to the rules as they read prior to those amendments unless otherwise noted.

whether a defendant's convictions are "numerous or of increasing seriousness." (*Black II, supra*, 41 Cal.4th at pp. 818–820.)

■ *Black II* compels the conclusion that defendant was not denied his right to a jury trial under *Cunningham*.[3] His criminal history made him eligible for the upper term sentence. As observed *ante*, at page 73, the probation report listed four aggravating circumstances related to defendant's recidivism: prior convictions that were numerous or of increasing seriousness, prior prison terms, being on parole at the time the crime was committed, and prior unsatisfactory performance on probation or parole. It is clear that at least two of these aggravating circumstances were established in accordance with *Blakely* and *Cunningham*—that defendant's prior convictions were numerous and that he had served prior prison terms. The probation report listed 10 prior convictions over an eight-year period. As we decided in *Black II, supra*, 41 Cal.4th at pages 819–820, the trial court had the authority to make a finding that defendant's prior convictions were numerous. Furthermore, defendant waived his right to a jury trial and admitted allegations that he had served two prison terms for those convictions.[4] We may assume that the trial court intended by its reference to defendant's criminal history to include at least these two aggravating factors.[5] Therefore, imposition of the upper term did not violate defendant's Sixth Amendment right to a jury trial under *Cunningham*.

With the exception of the factor of numerous or increasingly serious prior convictions, *Black II* did not determine whether a defendant has the right to a jury trial on the recidivism-related aggravating factors listed in California Rules of Court, rule 4.421(b)—that is, the factors of service of a prior prison term, commission of the current offense while on probation or parole, and unsatisfactory performance on probation or parole. Whether the *Almendarez-Torres* exception to the right to a jury trial on aggravating circumstances applies to findings on these factors is a question that has not been resolved by the decisions of the United States Supreme Court. Although it is not necessary to our resolution of the present case to address that question, we do

---

[3] Preliminarily, the Attorney General argues that defendant has forfeited his right to raise the jury-trial issue, because he did not object in the trial court to the sentencing procedure. We concluded in *Black II*, with respect to sentencing proceedings preceding the *Blakely* decision, that a claim of sentencing error under the principles established in *Blakely* is not forfeited by counsel's failure to object. (*Black II, supra*, 41 Cal.4th at pp. 810–812.)

[4] Because the trial court struck the enhancements that were based upon defendant's prior prison terms, it was free to consider those terms as an aggravating factor. (See § 1170, subd. (b); Cal. Rules of Court, rule 4.420(c).)

[5] As noted above, the probation report listed four separate aggravating circumstances based upon defendant's criminal history. The trial court's statement that it was relying on defendant's "extensive criminal history" does not clearly express whether the court intended to refer only to his prior convictions or also to include the other three factors related to his criminal history.

so in order to ensure consistency in the application of the *Almendarez-Torres* exception in the California appellate courts.

Defendant observes that the high court in its recent decisions consistently has referred to the *Almendarez-Torres* exception as applying to "the fact of a prior conviction." (*Cunningham, supra*, 549 U.S. at pp. 288–289 [127 S.Ct. at p. 868]; see *Blakely, supra*, 542 U.S. at p. 301; *Apprendi, supra*, 530 U.S. at p. 490.) Defendant urges us to construe the exception as narrowly as possible because, in his view, the rationale for the *Almendarez-Torres* exception has been undermined by subsequent high court decisions.

█ It is true that, as we noted in *Black II*, some of the language in *Almendarez-Torres, supra*, 523 U.S. at pages 230–235, is inconsistent with the court's later reasoning in *Apprendi* and *Blakely*. (*Black II, supra*, 41 Cal.4th at p. 819, fn. 8.) In deciding in *Almendarez-Torres* whether the defendant was entitled to a jury trial on the federal sentencing factor of a prior conviction, the high court focused upon whether Congress—in referring to the fact of prior conviction—intended to create an element of a crime or a sentencing factor. Subsequently, in *Apprendi* and *Blakely*, the high court abandoned that approach and focused upon whether the factual finding at issue increased the maximum potential penalty for the offense. Nevertheless, the court has continued to exempt "the fact of a prior conviction" from the Sixth Amendment's requirement that a fact exposing a defendant to a higher sentence be proved to a jury beyond a reasonable doubt. (See *Apprendi, supra*, 530 U.S. at p. 490; *Blakely, supra*, 542 U.S. at p. 301; *Cunningham, supra*, 549 U.S. at p. 274 [127 S.Ct. at p. 860]; *United States v. Booker* (2005) 543 U.S. 220, 245 [160 L.Ed.2d 621, 125 S.Ct. 738].)

Despite the narrow language employed by the United States Supreme Court, most federal appellate court decisions have declined to limit the "prior convictions" exception to the mere fact of a prior conviction. Rather, they agree that a judge may make factual findings on a variety of issues that are related to a defendant's recidivism. (See, e.g., *U.S. v. Corchado* (10th Cir. 2005) 427 F.3d 815, 820 [exception extends to " 'subsidiary findings,' " including whether the defendant was on probation when he committed the crime]; *U.S. v. Carrillo-Beltran* (8th Cir. 2005) 424 F.3d 845, 848 [no right to a jury trial on the question whether a prior conviction described under an alias is attributable to the defendant]; *U.S. v. Hollingsworth* (6th Cir. 2005) 414 F.3d 621, 623 [judge may determine whether a prior conviction was for a crime of violence]; *U.S. v. Fagans* (2d Cir. 2005) 406 F.3d 138, 141–142 [judge may make a finding that the defendant was on probation when he committed the offense; the exception for a prior conviction logically encompasses "the conviction itself and the type and length of a sentence imposed"]; *U.S. v. Kempis-Bonola* (8th Cir. 2002) 287 F.3d 699, 703 ["sentencing-related

circumstances of recidivism," including the aggravated nature of a prior felony conviction, "are facts that may be found by the sentencing judge and are not within the scope of *Apprendi*'s holding"]; *U.S. v. Santiago* (2d Cir. 2001) 268 F.3d 151, 156 [whether prior convictions arose from offenses committed on different occasions "is not a fact which is different in kind from the types of facts already left to the sentencing judge by *Almendarez-Torres* and *Apprendi*," even if that fact is more likely to be contested]; but see *Butler v. Curry* (9th Cir. 2008) 528 F.3d 624 [fact of being on probation at the time of the crime does not come within the *Almendarez-Torres* exception].)

A majority of the state appellate courts that have addressed the issue before us also have concluded that the *Almendarez-Torres* exception is not limited to the mere circumstance of a prior conviction, but extends to other facts arising out of a prior conviction, including a defendant's parole or probation status and service of a prior prison term. (*State v. Jones* (2006) 159 Wn.2d 231 [149 P.3d 636, 642] ["[l]ike the inquiry associated with the fact of a prior conviction," an inquiry into whether the defendant was on community placement at the time of the offense "(1) is inherently reliable, (2) arises out of a prior conviction based upon a finding of guilt by a trier of fact or the defendant's guilty plea, and (3) is the type of inquiry traditionally performed by judges as part of the sentencing function"]; *State v. Fagan* (2006) 280 Conn. 69 [905 A.2d 1101, 1117] [whether offense was committed while the defendant was released on bond involves a legal determination "and that, accordingly, he was not entitled to a jury trial on the issue of his status"]; *Ryle v. State* (Ind. 2005) 842 N.E.2d 320, 323–325 [circumstance that the defendant was on probation at the time of the offense need not be proved to a jury when it is conclusively established by court and prison records]; *State v. Allen* (Minn. 2005) 706 N.W.2d 40, 48 ["[T]he fact a defendant is on probation at the time of the current offense arises from, and is so essentially analogous to, the fact of a prior conviction, that constitutional considerations do not require it to be determined by a jury. [Citations.] [¶] . . . Like the fact or character of a prior conviction, a defendant's custody status can be determined by reviewing court records relating to that conviction."]; *State v. Stewart* (2002) 368 Md. 26 [791 A.2d 143, 152] [the defendant is not entitled to a jury trial in determining whether he had served at least one term of confinement of at least 180 days in a correctional institution, because that is a fact related to recidivism, "a question that traditionally has been reserved for the sentencing court"].)

A small minority of state courts have reached a different conclusion. The North Carolina Court of Appeal held that the prior conviction exception to the right to jury trial did not extend to the circumstance that the defendant committed the offense while on probation. (*State v. Wissink* (2005) 172 N.C.App. 829 [617 S.E.2d 319, 324–325].) The court reasoned that it was bound by language in *Blakely* and *Apprendi* that limits the exception to

the fact of a prior conviction. (*State v. Wissink*, 617 S.E.2d at p. 325.) In addition, the court noted that "the fact of defendant's probationary status did not have the procedural safeguards of a jury trial and proof beyond a reasonable doubt recognized in *Apprendi* as providing the necessary protection for defendants at sentencing." (*Ibid.*) Arizona's intermediate appellate court and Oregon's high court have reached similar conclusions. (See *State v. Gross* (2001) 201 Ariz. 41 [31 P.3d 815] [right to jury trial applies to the circumstance that defendant was on release status at the time of the offense; the narrow exception for prior convictions recognized in *Apprendi* cannot be expanded to include other facts]; accord, *State v. Benenati* (2002) 203 Ariz. 235 [52 P.3d 804, 810]; *State v. Steele* (2006) 205 Or.App. 469 [134 P.3d 1054] [increase in sentence based upon defendant's persistent involvement in similar offenses or being on supervision at the time of offense requires a jury determination].)

The evolution of the United States Supreme Court's Sixth Amendment sentencing jurisprudence leaves us with limited guidance as to whether it would apply the *Almendarez-Torres* exception to the circumstance that a defendant was on probation or parole at the time of the offense, or that a defendant has served a prior prison term. Nevertheless, we agree with the majority of state and federal decisions holding that the federal constitutional right to a jury trial and proof beyond a reasonable doubt on aggravating circumstances does not extend to the circumstance that a defendant was on probation or parole at the time of the offense or has served a prior prison term.

We previously have rejected a narrow or literal application of the high court's reference to "the fact of a prior conviction." In *People v. McGee* (2006) 38 Cal.4th 682, 706 [42 Cal.Rptr.3d 899, 133 P.3d 1054] (*McGee*), we held that a trial court may, consistent with *Apprendi*, determine "the nature or basis of the defendant's *prior conviction*—specifically, whether *that conviction* qualified as a conviction of a serious felony." Because *McGee* involved a conviction in another jurisdiction for a crime whose elements did not necessarily correspond with those of a California serious felony, such a determination would require the trial court to examine the record of the earlier criminal proceeding. "The need for such an inquiry does not contemplate that the court will make an independent determination regarding a disputed issue of fact relating to the defendant's prior conduct [citation], but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that the conviction is of the type that subjects the defendant to increased punishment under California law. This is an inquiry that is quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court." (*McGee, supra*, 38 Cal.4th at p. 706, italics omitted.) In *McGee*, and more recently in *Black II*, we cited with approval the decision

of the Court of Appeal in *People v. Thomas* (2001) 91 Cal.App.4th 212, 221–222 [110 Cal.Rptr.2d 571], which held that the *Almendarez-Torres* exception applies to the circumstance that the defendant had served a prior prison term. (See *McGee, supra,* 38 Cal.4th at pp. 700–701; *Black II, supra,* 41 Cal.4th at p. 819.)

■ We have noted that in *Apprendi,* the high court pointed to three factors that distinguish recidivism from other matters employed to enhance punishment: "(1) recidivism traditionally has been used by sentencing courts to increase the length of an offender's sentence, (2) recidivism does not relate to the commission of the charged offense, and (3) prior convictions result from proceedings that include substantial protections." (*McGee, supra,* 38 Cal.4th at p. 698, citing *Apprendi, supra,* 530 U.S. at pp. 487–488.) Applying these three factors to the aggravating circumstances at issue in the present case, we conclude that service of a prior prison term and the commission of an offense while on probation or parole are, like the fact of a prior conviction, distinguishable from other matters employed to enhance punishment.

■ First, *Almendarez-Torres* referred generally to "recidivism" as a traditional basis for increasing an offender's sentence. (*Almendarez-Torres, supra,* 523 U.S. at pp. 230, 243.) A defendant who has committed another offense after a prior conviction, after serving a prison term, or while on probation or parole, demonstrates that he or she is less amenable to rehabilitation than a person who has not done so and, accordingly, such a defendant is more deserving of punishment. These aggravating circumstances, like prior convictions, are aspects of recidivism.

Second, as *Apprendi* noted, the *Almendarez-Torres* decision emphasized that recidivism is not related to the commission of the present offense. (*Apprendi, supra,* 530 U.S. at p. 488, citing *Almendarez-Torres, supra,* 523 U.S. at p. 243.) Likewise, a defendant's service of a prior prison term is not related in any way to the commission of the charged offense. In this respect, a prior prison term is indistinguishable from a prior conviction.

A defendant's commission of an offense while on probation or parole does relate to the charged offense in that the defendant's parole or probation status must exist on the date of the offense. The date of the offense, however, ordinarily is established by the jury's verdict. In determining whether the offense was committed while the defendant was on probation or parole, the trial court is not required to make any factual finding regarding the charged offense. It need only determine the period during which the defendant was on probation or parole and compare those dates to the date of the charged offense, as found by the jury. The trial court may find this aggravating circumstance to exist, without engaging in any factfinding regarding the

charged offense. Accordingly, a trial court's conclusion that the charged offense was committed while the defendant was on probation or parole, like a finding of a prior conviction, does not require judicial factfinding regarding the charged offense.

■ Third, the decision in *Apprendi* noted "the certainty that procedural safeguards attached to any 'fact' of prior conviction." (*Apprendi, supra,* 530 U.S. at p. 488.) Similarly, in *Jones v. United States* (1999) 526 U.S. 227, 249 [143 L.Ed.2d 311, 119 S.Ct. 1215], the high court explained that "unlike virtually any other consideration used to enlarge the possible penalty for an offense . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." The circumstance that a defendant was on probation or parole or served a prior prison term arises out of a prior conviction and results from procedures that were conducted in accordance with constitutional requirements designed to ensure a fair and reliable result. Furthermore, the circumstance of a prior prison term or of probation or parole status ordinarily is well documented in the same type of official records used to establish the fact and nature of a prior conviction—court records, prison records,[6] or criminal history records maintained by law enforcement agencies.[7]

■ Defendant contends that a jury trial nevertheless is required, because any of these recidivism factors may be in dispute in a particular case. (See, e.g., *People v. Willis* (2002) 28 Cal.4th 22 [120 Cal.Rptr.2d 105, 46 P.3d 898] [evidence found in a warrantless parole search was suppressed because the information obtained by the police concerning defendant's parole status was erroneous]; *People v. Seals* (1993) 14 Cal.App.4th 1379 [18 Cal.Rptr.2d 676] [because the defendant had served a term in the former California Youth Authority, the finding that he had served a prior prison term depended on whether he had been directly committed to the Youth Authority or merely been housed there].) The same is true, however, regarding the simple fact of a prior conviction. For example, if an alias was used in committing the prior crime, there could be a factual issue as to whether the defendant is the person who was convicted. (See, e.g., *People v. Belmares* (2003) 106 Cal.App.4th 19 [130 Cal.Rptr.2d 400] [the defendant had no constitutional right to a jury trial on the issue of his identity as the person previously convicted]; *People v. Garcia* (2003) 107 Cal.App.4th 1159 [132 Cal.Rptr.2d 694] [same].) We see

---

[6] Section 969b provides that prison records or copies of such records, if certified by the custodian of records, are admissible as prima facie evidence that a person has been convicted of a crime and has served a term of imprisonment for that crime.

[7] See *People v. Martinez* (2000) 22 Cal.4th 106 [91 Cal.Rptr.2d 687, 990 P.2d 563] (trial court did not abuse its discretion in admitting computerized criminal history records maintained by the Department of Justice and by the Los Angeles County Sheriff's Department as evidence demonstrating that defendant had sustained prior convictions and served separate prison terms).

no reason why the high court's recognition of an exception to the right to jury trial on prior conviction allegations should not encompass the circumstances that the defendant served a prior prison term or committed an offense while on probation or parole.

Whether the aggravating circumstance of a defendant's prior unsatisfactory performance on probation or parole comes within the *Almendarez-Torres* exception, in contrast, will depend upon the evidence by which that circumstance is established in a particular case. In some instances, the defendant's unsatisfactory performance on probation or parole is proved by evidence demonstrating that, while previously on probation or parole, he committed and was convicted of new offenses. For example, in *People v. Yim* (2007) 152 Cal.App.4th 366, 370 [60 Cal.Rptr.3d 887], the Court of Appeal upheld the trial court's finding that the defendant had performed unsatisfactorily on parole, based upon evidence establishing that he was on probation or parole at the time he committed two prior offenses and was on parole when he committed the most recent offense. "Each time appellant has been granted probation or parole, he has reoffended." (*Ibid.*) The Court of Appeal in *Yim* also concluded that a jury trial on this aggravating factor was not required, because the factor was related to recidivism and could be "determined by reference to 'court records' pertaining to appellant's prior convictions, sentences and paroles. The mere recitation of his dates of conviction and releases on parole [citation] demonstrate[s], as a matter of law, that he committed new offenses while on parole." (*Id.* at p. 371.) Similarly, in the present case, defendant's criminal history, as recited in the probation report, indicates that several of his prior convictions occurred while he was on probation. When a defendant's prior unsatisfactory performance on probation or parole is established by his or her record of prior convictions, it seems beyond debate that the aggravating circumstance is included within the *Almendarez-Torres* exception and that the right to a jury trial does not apply.

On the other hand, in some instances, a finding of unsatisfactory performance could be based upon other evidence of misconduct that was not previously adjudicated in a criminal trial. For example, a presentence report might allege that the defendant did not appear for appointments, failed a drug test, or stopped attending counseling sessions as directed. Such assertions may be based on information obtained from the probation officer or others and may be open to dispute.

 In circumstances in which a finding of poor performance on probation or parole can be established only by facts other than the defendant's prior *convictions*, we conclude that the right to a jury trial applies to such factual determinations. In that situation, only one of the three factors discussed *ante*, at pages 80–81, suggests a basis for treating poor performance

on probation or parole in the same manner as a prior conviction: the factor that poor performance is an aspect of recidivism. The other two factors, however, point toward the opposite conclusion. As to the second factor, although a defendant's prior conduct while on probation or parole may not involve the present offense, neither does it relate to a prior conviction. Thus, determining whether a defendant's performance on probation or parole has been unsatisfactory often entails a type of factfinding very different from what ordinarily occurs in resolving the question of whether a defendant suffered a prior conviction.

With reference to the third factor, a finding of poor performance based upon evidence other than prior convictions does not necessarily include the procedural safeguards that are associated with prior convictions. Even if the trial court's finding of unsatisfactory performance is based upon a prior *revocation* of probation or parole, the proceedings that result in such revocation do not entail the same procedural safeguards as a criminal trial. Due process requires that a parolee receive notice of the claimed violation and an opportunity to be heard and to present evidence before a neutral body. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 485–490 [33 L.Ed.2d 484, 92 S.Ct. 2593]; see also § 3060.) Similar procedural protections are required for revocation of probation. (*People v. Vickers* (1972) 8 Cal.3d 451, 458–461 [105 Cal.Rptr. 305, 503 P.2d 1313]; see also § 1203.2.) The right to a jury trial and the requirement of proof beyond a reasonable doubt, however, do not apply in revocation proceedings. (See §§ 1203.2, subd. (a), 3060; see also *Morrissey v. Brewer, supra,* 408 U.S. at p. 480 ["the full panoply of rights due a defendant in [a criminal proceeding] does not apply to parole revocations"].) Accordingly, we doubt that the United States Supreme Court would conclude that a defendant's prior unsatisfactory performance on probation or parole is included within the exception the court has recognized for "the fact of a prior conviction," unless that circumstance is established by defendant's history of prior convictions.

### III.

The remaining question is whether defendant's statutory or constitutional rights were violated because the trial court, in exercising its discretion to select among the terms for which defendant was eligible, took into account facts that the jury implicitly found not to be true. Defendant contends the trial court's reliance upon its own conclusion that the victim was put in fear is in direct conflict with the jury's decision to acquit defendant of all charges involving the element of force or fear. Defendant contends that the sentencing court's consideration of evidence underlying counts of which he was acquitted constitutes an improper exercise of discretion under California law and

also violates his double jeopardy rights under the federal Constitution and related rights to a jury trial, to proof beyond a reasonable doubt, and to due process of law.

A long-standing and unresolved split exists among the Courts of Appeal as to whether, under California law, a sentencing court may rely upon facts underlying charges on which the defendant was acquitted. In *People v. Takencareof* (1981) 119 Cal.App.3d 492, 498 [174 Cal.Rptr. 112] (*Takencareof*), the appellate court concluded that "[i]t would be anomalous to hold that if the jury finds the defendant not guilty of a count utilizing the constitutionally exacting standard of proof beyond a reasonable doubt, he should face the same alleged crime at sentencing under a preponderance of evidence standard." The defendant in *Takencareof* was convicted of burglary but acquitted of arson. The trial court justified its decision to deny probation by citing the substantial financial and other impacts of the arson offense. In support of its conclusion that the trial court had erred, the Court of Appeal did not cite any statute or constitutional provision, relying instead upon this court's decision in *People v. Richards* (1976) 17 Cal.3d 614 [131 Cal.Rptr. 537, 552 P.2d 97] (*Richards*). In *Richards*, we held that a trial court could not order restitution to a victim of a purported crime of which the defendant was acquitted. We stated, "In the course of convincing a jury to doubt his guilt on one charge, a defendant should not have the additional task of persuading the judge regarding the subsequent sentencing disposition on other charges." (*Richards, supra*, 17 Cal.3d at p. 624.)

*Takencareof* distinguished two decisions of this court, which held that evidence of a crime for which a defendant has been acquitted may be considered at a probation revocation hearing (*In re Coughlin* (1976) 16 Cal.3d 52 [127 Cal.Rptr. 337, 545 P.2d 249]) and a parole revocation hearing (*In re Dunham* (1976) 16 Cal.3d 63 [127 Cal.Rptr. 343, 545 P.2d 255]). In those cases, we rejected arguments that consideration of such conduct violates double jeopardy or due process principles, and held that proof beyond a reasonable doubt is not required in these proceedings. (*In re Coughlin, supra*, at pp. 55–60; *In re Dunham, supra*, at pp. 66–67.) "[T]he fact of an acquittal establishes only that the trier of fact entertained a reasonable doubt of defendant's guilt." (*In re Coughlin*, at p. 59.) Such a doubt does not preclude revocation of probation or parole. The Court of Appeal in *Takencareof* concluded that these cases were inapplicable. "The violation of the probationer's or parolee's status subjects him to commitment or return to prison on the original charge if the decisionmaking body determines that his continued freedom is inimical to society's safety. Although the order of commitment in the instant case was on the basis of the burglary [of which the defendant was convicted], Takencareof, a first offender whose liberty was not restricted by probation or parole, was in reality sent to prison on a charge of which he was acquitted. This was error." (*Takencareof, supra*, 119 Cal.App.3d at p. 500.)

Two decisions rendered subsequent to *Takencareof* reached a different conclusion. In *People v. Levitt* (1984) 156 Cal.App.3d 500 [203 Cal.Rptr. 276] the defendant was charged with murder but was convicted of only voluntary manslaughter. The Court of Appeal upheld the trial court's determination that the victim was particularly vulnerable. The appellate court held that the trial court, while rejecting testimony indicating that the defendant had been attacked, could have concluded nonetheless that the defendant killed the victim because the victim was a witness to another crime. Thus, the reviewing court reasoned, the victim was more vulnerable than the usual manslaughter victim because he did nothing to provoke the attack and simply was in the wrong place at the wrong time. (*Id.* at p. 515.) The appellate court acknowledged that "this view of the evidence may be contrary to the jury's implied findings of no malice," but concluded that "the trial court was entitled to take such a contrary view. The jury's verdict did not imply a rejection of the evidence of malice; it merely meant that the jury did not feel malice was proven beyond a reasonable doubt. The standard governing a sentencing court is far less stringent; the court need only determine whether aggravating factors are established by a preponderance of evidence." (*Ibid.*, italics omitted.) Similarly, *People v. Lewis* (1991) 229 Cal.App.3d 259, 264–265 [280 Cal.Rptr. 128], held that a jury's finding that an alleged weapon-use enhancement was not true did not preclude a trial judge from considering the defendant's use of a weapon as a reason to impose a full consecutive sentence for the offense of rape.

As explained below, we conclude that nothing in the California sentencing scheme or in constitutional principles concerning double jeopardy, due process, or the right to a jury trial supports the holding in *Takencareof, supra*, 119 Cal.App.3d 492, and accordingly we disapprove that decision.

 California law affords the trial court broad discretion to consider relevant evidence at sentencing. "[T]he court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (§ 1170, subd. (b).) The trial court may consider any "criteria reasonably related to the decision being made." (Cal. Rules of Court, rule 4.408(a).)[8] The court specifically is authorized to consider "the record in the case." (§ 1170, subd. (b).) Nothing in the applicable statute or rules

---

[8] As noted above, reference is to the rules as they existed prior to the May 23, 2007, revisions made in response to the Legislature's amendment of the DSL. (See, *ante*, fn. 2.) At the time of defendant's sentencing hearing, aggravating factors were required to be proved by only a preponderance of the evidence. (Cal. Rules of Court, rule 4.420(b).) The current version of rule 4.420 does not specify any burden of proof for aggravating and mitigating circumstances.

suggests that a trial court must ignore evidence related to the offense of which the defendant was convicted, merely because that evidence did not convince a jury that the defendant was guilty beyond a reasonable doubt of related offenses.

■ Defendant acknowledges that the United States Supreme Court has held that the double jeopardy clause does not preclude a trial judge from considering, at sentencing, conduct underlying a charge of which the defendant was acquitted. (*United States v. Watts* (1997) 519 U.S. 148, 157 [136 L.Ed.2d 554, 117 S.Ct. 633].) The high court reasoned that an acquittal merely establishes the existence of a reasonable doubt as to guilt. Unless specific findings are made, "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict . . . ." (*Id.* at p. 155.) Facts relevant to sentencing need be proved only by a preponderance of the evidence, and " 'an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.' " (*Id.* at p. 156, quoting *Dowling v. United States* (1990) 493 U.S. 342, 349 [107 L.Ed.2d 708, 110 S.Ct. 668].) We previously have endorsed the same reasoning in rejecting due process and double jeopardy challenges to the use of evidence of a crime of which the defendant has been acquitted, for the purpose of revocation of probation or parole. (See *In re Coughlin, supra,* 16 Cal.3d at p. 59; *In re Dunham, supra,* 16 Cal.3d at pp. 66–67.)

■ Nor did the sentencing judge's consideration of conduct underlying acquitted charges violate defendant's Sixth Amendment right to a jury trial. We previously have explained that "the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' (*Blakely, supra,* 542 U.S. at p. 313), that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone (*Cunningham, supra,* 549 U.S. at p. 281 [127 S.Ct. at p. 863])." (*Black II, supra,* 41 Cal.4th at p. 812.) "Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." (*Harris v. United States* (2002) 536 U.S. 545, 558 [153 L.Ed.2d 524, 122 S.Ct. 2406].) Because in the present case other aggravating factors rendered defendant eligible for the upper term, the judge's consideration of evidence of conduct underlying counts of which defendant was acquitted, in selecting the sentence, did not implicate defendant's constitutional rights to a jury trial or to proof beyond a reasonable doubt.[9]

---

[9] Defendant argues that in a case, such as this one, in which mitigating factors exist, the defendant is entitled to a jury trial on all aggravating factors because, under the rules applicable at the time of defendant's sentencing, the upper term could not be imposed unless

Defendant contends that even when a trial court exercises its discretion to select a sentence within the statutory maximum, consideration of acts underlying counts of which the defendant has been acquitted violates the Sixth Amendment principles established in decisions of the United States Supreme Court, including *Apprendi, Blakely*, and *Cunningham*. According to defendant, permitting a judge who disagrees with the jury's verdict of acquittal to essentially correct that verdict by imposing a higher sentence on the offense of which the defendant was convicted would undermine the jury's role as the fact finder. Defendant urges this court to adopt the rule of *Takencareof* in order to preserve and protect the role of the jury.

Federal appellate courts have rejected this argument in the context of federal sentencing law. (See, e.g., *U.S. v. Horne* (7th Cir. 2007) 474 F.3d 1004, 1006–1007; *U.S. v. Vaughn* (2d Cir. 2005) 430 F.3d 518, 526–527; *U.S. v. Magallanez* (10th Cir. 2005) 408 F.3d 672, 684–685; *U.S. v. Duncan* (11th Cir. 2005) 400 F.3d 1297.) These courts have applied the same rationale employed by the United States Supreme Court in *United States v. Watts, supra*, 519 U.S. 148, in addressing a double jeopardy challenge: the trial court's consideration of conduct underlying counts of which the defendant has been acquitted is not inconsistent with the jury's verdict of acquittal, because a lower standard of proof applies at sentencing. (See *Horne, supra*, 474 F.3d at pp. 1006–1007 ["You can think it slightly more likely than not that a defendant committed some crime without thinking it *so* much more likely that you would vote to convict him."]; *Vaughn, supra*, 430 F.3d at p. 527 ["there is no logical inconsistency in determining that a preponderance of the evidence supports a finding about which there remains a reasonable doubt . . ."]; *Magallanez, supra*, 408 F.3d at p. 685 ["when a district court makes a determination of sentencing facts by a preponderance test under the now-advisory Guidelines, it is not bound by jury determinations reached through application of the more onerous reasonable doubt standard"]; *Duncan, supra*, 400 F.3d at p. 1304 [conduct of which the jury acquitted the defendant may be considered at sentencing if proved by a preponderance of the evidence].)

Permitting a judge to consider evidence of conduct underlying counts of which the defendant was acquitted does not in any way undermine the jury's role in establishing, by its verdict, the maximum authorized sentence. Even if the trial court in the present case did sentence defendant based upon a view

---

aggravating factors outweigh mitigating factors. (See Cal. Rules of Court, rule 4.420(b).) We concluded in *Black II* that the weighing process required to justify imposition of an upper term does not implicate a defendant's Sixth Amendment rights, because the weighing of aggravating and mitigating factors is not the equivalent of a factual finding. (*Black II, supra*, 41 Cal.4th at p. 814, fn. 4.) Rather, "the weighing of aggravating and mitigating circumstances simply is a process by which the trial court selects the most appropriate sentence in a particular case." (*Ibid.*)

of the evidence that would have justified a guilty verdict on one or more of the crimes of violence of which defendant was acquitted, the court would not thereby have been "correcting" any perceived error in the jury's verdict. The trial court was limited by the jury's verdict to imposing a sentence authorized for the crime of which defendant was convicted. The upper term for that offense—joyriding—was four years, a term lower than, for example, the five-year term that would have been available had defendant been convicted of second degree robbery (§ 213, subd. (a)(2)), or the life term that would have been available had he been convicted of kidnapping to commit robbery (§ 209, subd. (b)(1)).

Our decision in *Richards, supra*, 17 Cal.3d 614, upon which *Takencareof* relied, is distinguishable. In *Richards*, the defendant was charged with two counts of grand theft based upon fraudulent sales of mining claims, each involving a different victim and a separate transaction. The defendant was found guilty on the first count and not guilty on the second. We held that the trial court erred in ordering restitution to the second victim as a condition of probation. We reasoned that one of the goals of section 1203.1, subdivision (b), which authorizes restitution as a reasonable condition of probation, is rehabilitation: "Restitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole." (*Richards, supra*, 17 Cal.3d at p. 620.) The trial court's order in that case, however, appeared designed to achieve a different and improper purpose, namely "to resolve the civil liability of the criminal." (*Ibid.*) We concluded that "[i]f a restitution order is to redirect a defendant to acceptance of responsibility for the crime he has committed, the order must be directly related to that crime." (*Id.* at p. 622.)

 In contrast to *Richards*, in the present case the offense of which defendant was convicted and the counts of which he was acquitted were all part of a single series of events and involved a single victim. Accordingly, the sentence imposed by the trial court was directly related to that offense. Because the sentence imposed fell within the range authorized for the offense of which defendant was convicted, that sentence is not analogous to the restitution order erroneously imposed in *Richards*. That order extended beyond the losses caused by the crime of which the defendant was convicted and held him responsible to a different victim for a different and additional sum of money, thus depriving the defendant of the benefit of his acquittal, at least as to financial consequences. Defendant in the present case, on the other hand, received the benefit of the jury's acquittal, because the resulting sentence imposed by the trial court was limited to that available for the offense of joyriding. We perceive no unfairness in permitting the trial court,

in selecting the sentence most appropriate for the crime, to take into account all of the evidence related to defendant's conduct in committing that offense.

## IV.

For the reasons stated above, the decision of the Court of Appeal is affirmed.

Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Concurring.—As the United States Supreme Court has recently stated, "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, *other than a prior conviction,* not found by a jury or admitted by the defendant." (*Cunningham v. California* (2007) 549 U.S. 270, 274–275 [166 L.Ed.2d 856, 127 S.Ct. 856, 860], italics added; see also *Blakely v. Washington* (2004) 542 U.S. 296, 301 [159 L.Ed.2d 403, 124 S.Ct. 2531]; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 488–490 [147 L.Ed.2d 435, 120 S.Ct. 2348].) In part II of its opinion here, the majority applies that rule to certain recidivism-related provisions of the California Rules of Court that, at the time of defendant's trial, permitted trial courts to impose a sentence above the statutory maximum if the defendant had "served a prior prison term" (Cal. Rules of Court, rule 4.421(b)(3)), if the defendant "was on probation or parole when the crime was committed" (*id.,* rule 4.421(b)(4)), or if "[t]he defendant's prior performance on probation or parole was unsatisfactory" (*id.,* rule 4.421(b)(5)).

The majority holds that the federal Constitution's right to a jury trial does not apply to determinations that the defendant has served a prior prison term or was on probation or parole when the crime was committed (maj. opn., *ante,* at p. 81). With regard to a defendant's performance on probation or parole, the majority holds that the jury trial right does not apply if, while on probation or parole, the defendant committed new crimes resulting in convictions (*id.* at p. 82); the right to a jury trial does, however, apply if "poor performance on probation or parole can be established only by facts other than the defendant's prior *convictions*" (*ibid.*). I agree with these conclusions. But in its analysis of these issues, the majority relies heavily (see maj. opn., *ante,* at pp. 79–80) on *People v. McGee* (2006) 38 Cal.4th 682 [42 Cal.Rptr.3d 899, 133 P.3d 1054] (*McGee*), a case in which I dissented. Below, I explain why the majority's holdings are consistent with my dissent in *McGee.*[1]

---

[1] Part II. of the majority opinion also holds that in this case the trial court did not violate defendant's right to a jury trial because at least two of the aggravating circumstances on which

## I

In *McGee, supra*, 38 Cal.4th 682, the defendant was convicted in California of several crimes not pertinent here, and the prosecution sought to increase his sentence for those crimes based on two prior robbery convictions suffered in Nevada. Under California law, the prior robberies could be used to increase the defendant's sentence only if they satisfied California's statutory definition of robbery. But as the defendant pointed out, Nevada's definition of robbery is not identical to California's. Nevada, unlike California, does not require that a robbery have the elements of specific intent to permanently deprive the victim of property and placing the victim in fear of immediate harm.

Thus, at issue in *McGee* was whether the lack of any findings on those two statutory elements in the Nevada courts entitled the defendant to have a jury in California, where he was on trial, determine whether these elements had been satisfied when he committed the Nevada robberies. The majority in *McGee* held that the defendant did not have the right to such a determination by the jury, and that instead the California trial court could, after examining the records of those prior Nevada convictions, decide that the conduct underlying the defendant's two Nevada robbery convictions satisfied California's statutory definition of robbery. (*McGee, supra*, 38 Cal.4th at pp. 686–687.) I disagreed.

I explained in *McGee*: "[W]hen the prosecution seeks to increase a defendant's sentence based on a prior conviction, the Sixth and Fourteenth Amendments to the federal Constitution entitle the defendant to a jury trial, with proof beyond a reasonable doubt, on *facts pertaining to the conduct underlying the prior conviction* when . . . (1) those facts were never determined by a jury or by the court that convicted the defendant of the prior offense, (2) those facts were never admitted by the defendant, and (3) those facts, if found true, would increase the defendant's sentence beyond the statutory maximum." (*McGee, supra*, 38 Cal.4th at p. 710 (dis. opn. of Kennard, J.), italics added.)

Applying that standard to the Nevada convictions at issue in *McGee*, I reasoned: "[D]efendant never admitted the factual allegations pertaining to

---

the trial court relied to sentence defendant to the upper term of imprisonment were established in a manner permitted by *Cunningham v. California, supra*, 549 U.S. 270. I agree with this holding, which necessarily follows from this court's decision in *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black II*). Part III. of the majority opinion holds that the trial court can, in deciding whether to sentence a defendant to the upper term, consider facts pertaining to charges of which the defendant was acquitted, so long as (as in this case) at least one aggravating circumstance was established in accordance with *Cunningham*. I agree with the majority's resolution of this issue as well.

the *conduct* underlying his prior Nevada convictions that are now being used in California to increase his sentence. (He never admitted that he committed the two robberies in Nevada with the intent to permanently deprive the victims of their property, and that he placed the victims or persons in the victims' company in fear of immediate injury.) The [Nevada] trial courts that accepted defendant's guilty pleas to the two robbery offenses never determined the truth of those factual allegations, and they did not provide defendant with any procedural safeguards pertaining to those allegations, because his guilt of the Nevada offenses did not turn on the truth or falsity of those allegations. The trial court in this case, based on its determination that the factual allegations relating to the prior robbery convictions were true, imposed a sentence beyond the statutory maximum. Thus, by denying defendant a jury trial on the truth of those factual allegations, the trial court violated defendant's Sixth and Fourteenth Amendment rights to a jury trial." (*McGee, supra*, 38 Cal.4th at p. 714 (dis. opn. of Kennard, J.).)

At issue here is whether, before an aggravated sentence can be imposed, a defendant is entitled to a jury determination that the defendant had "served a prior prison term" (Cal. Rules of Court, rule 4.421(b)(3)), that the defendant "was on probation or parole when the crime was committed" (*id.,* rule 4.421(b)(4)), or that "[t]he defendant's prior performance on probation or parole was unsatisfactory" (*id.,* rule 4.421(b)(5)). The first two of these circumstances—the defendant's service of a prior prison term and the defendant's being on probation or parole when the crime was committed—do not (unlike *McGee, supra*, 38 Cal.4th 682) require a determination of any factual questions pertaining to the defendant's *conduct*. Rather, the only possible factual issues that may arise—whether the defendant was on probation when the current crime was committed, and whether the defendant had served a prior prison term—can be resolved simply by examining the defendant's criminal record. As the majority here points out, "the circumstance of a prior prison term or of probation or parole status ordinarily is well documented in the same type of official records used to establish the fact and nature of a prior conviction—court records, prison records, or criminal history records maintained by law enforcement agencies." (Maj. opn., *ante*, at p. 81, fn. omitted.) I agree with the majority that on these matters, a defendant has no right to a jury trial.

With regard to the third aggravating circumstance mentioned above—the defendant's prior performance on probation or parole was unsatisfactory— this presents a factual issue that *is* based on the defendant's *conduct*. Under the reasoning of my dissenting opinion in *McGee, supra*, 38 Cal.4th 682, the defendant should ordinarily be entitled to a jury trial on this question, and the majority here so holds. (Maj. opn., *ante*, at pp. 82–83.) But, as the majority notes, sometimes a defendant's unsatisfactory performance is shown by the defendant's *conviction* of a crime committed while the defendant was on

probation or parole. In these instances the defendant has already received the right to a jury trial on the underlying factual issues in the earlier proceeding that resulted in the new conviction. In the words of the majority: "When a defendant's prior unsatisfactory performance on probation or parole is established by his or her record of prior convictions, it seems beyond debate . . . that the right to a jury trial does not apply." (Maj. opn., *ante*, at p. 82.) I agree.

## II

For the reasons given above, I agree with the majority's application here of the principles the high court set forth in *Cunningham v. California, supra*, 549 U.S. 270, *Blakely v. Washington, supra*, 542 U.S. 296, and *Apprendi v. New Jersey, supra*, 530 U.S. 466.