Filed 1/7/14  P. v. Gardner CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEROME LAMONT GARDNER,<br><br>    Defendant and Appellant. | B245426<br><br>(Los Angeles County<br>Super. Ct. No. BA384242) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jerome Lamont Gardner appeals from a judgment entered following a jury trial in which he was convicted of voluntary manslaughter. (Pen. Code, § 192, subd. (a).)[1] He argues the trial court abused its discretion in sentencing him to the upper term of 11 years in prison. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant began dating Jasione Thomas in June 2009, and fathered her child sometime thereafter. By April 2011, he was expecting another child with Emily Herron, and did not want Ms. Thomas to learn of his affair. To resolve his dilemma, appellant said he wanted to terminate Ms. Herron's pregnancy by having somebody fight with her.

On April 28, 2011, appellant drove Ms. Thomas, Lashanique Hulse, David Johnson, and others to his cousin's house to drop off his child. Mr. Johnson brought a gun with him after appellant told him to do so. While in the car, appellant received a phone call from Ms. Herron, who said she wanted his "baby mama" to meet her on Coco Avenue for a fight. Ms. Thomas knew she was on her way to fight Ms. Herron. Upon arriving, everybody exited the car, and Ms. Thomas and Ms. Herron exchanged punches. Appellant told Ms. Thomas to "[g]et that bitch." He attempted to intervene once it was clear that Ms. Herron was getting the best of the fight.

As the fight continued, Greg Horn, a security guard at a nearby high school, was driving on an adjacent street. After somebody flagged him down, Mr. Horn exited his car, walked toward appellant, and asked what was going on. Appellant responded using gang jargon, such as "Fuck BPS. This is 40s."[2] Ms. Herron, testifying for the prosecution, said that Mr. Horn made gestures indicating he wanted to fight. Ms. Hulse, also a witness for the prosecution, testified that Mr. Horn simply placed his hands on his

---

[1]      All subsequent references are to the Penal Code.

[2]      A witness testified that BPS is shorthand for Black P Stones, a gang that operates in the neighborhood, and that 40s are members of a rival Crips gang. Appellant testified that he never said anything gang related.

waist and adjusted his pants. Although Mr. Horn did not have a weapon or make any threats, appellant testified that he was afraid Mr. Horn had a gun. He backed away from Mr. Horn, tapped on his car, and told Mr. Johnson "to get off on him." Following this statement, Mr. Johnson began shooting. Mr. Horn fell, dove under a car, and later died from multiple gunshot wounds. After the shooting, appellant drove away.

On May 6, 2011, an FBI agent arrested appellant. During a subsequent interview at a police station, appellant said Mr. Horn did not look like he had wanted to fight. On November 29, 2011, appellant and Mr. Johnson were charged with felony-murder of Mr. Horn (§ 187, subd. (a)), with gang (§ 186.22, subd. (b)(1)(C)) and firearm (§ 12022.53) enhancements.

Both appellant and Mr. Johnson were tried before the same jury. The evidence at trial was in dispute. Testifying as a defense witness, Ms. Thomas said Ms. Herron initiated a conflict with her via the Internet and a phone conversation. Testifying in his own defense, appellant said he made the statement about the fight only as a joke. He also testified he did not know Mr. Johnson brought a gun to the fight.

The prosecution argued appellant was guilty of second degree murder as an aider and abettor and as an accomplice. Appellant's counsel contended he was not guilty because he did not kill Mr. Horn and did not ask Mr. Johnson to do so. The prosecution also argued Mr. Johnson was guilty of voluntary manslaughter under an imperfect self defense theory. Mr. Johnson's counsel argued that, if guilty of homicide at all, he only was guilty of voluntary manslaughter on theories of self defense, or, in the alternative, imperfect self defense.

On October 3, 2012, the jury found appellant guilty of the lesser included offense of voluntary manslaughter (§ 192, subd. (a)), and found the gang allegation (§ 186.22, subd. (b)) to be not true.[3] The court sentenced appellant to the upper term of 11 years in state prison on November 16, 2012. It outlined seven factors, and "weighed a senseless

---

[3] Because the jury verdict form did not include the firearm allegation, it made no finding as to that charge.

violence instigated by [appellant]" against his "lack of criminal history."  Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant contends the trial court abused its discretion by sentencing him to the upper term of 11 years.  He argues the sentencing decision was irrational and arbitrary because the court relied on evidence, allegedly supporting malice aforethought and the gang enhancement, which the jury did not credit.

"Voluntary manslaughter is punishable by imprisonment in the state prison for 3, 6, or 11 years."  (§ 193, subd. (a).)  During sentencing, "[t]he court shall select the term which, in the court's discretion, best serves the interests of justice."  (§ 1170, subd. (b).)  The statute directs courts to consider both aggravating and mitigating factors provided by the parties, and to "set forth on the record the reasons for imposing the term selected . . . ."  (*Ibid.*)  Courts may also consider "any other factor reasonably related to the sentencing decision."  (Cal. Rules of Court, rule 4.420(b).)  Most significant here, "[n]othing in the applicable statute or rules suggests that a trial court must ignore evidence related to the offense of which the defendant was convicted, merely because that evidence did not convince a jury that the defendant was guilty beyond a reasonable doubt of related offenses."  (*People v. Towne* (2008) 44 Cal.4th 63, 85-86 (*Towne*) [affirming court's sentence that considered evidence related to defendant's conduct in committing crime where jury impliedly found facts to be not true].)  Contrary to the standard for criminal trial verdicts, "[f]acts relevant to sentencing need be proved only by a preponderance of the evidence."  (*Id.* at p. 86.)  "[T]he trial court may consider a fact as aggravating even though the jury acquitted the defendant of charges based on that fact."  (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1065 [affirming upper-term sentencing decision based on facts not found true by jury, citing *Towne*, at pp. 83-89].)

We review the broad discretion of trial courts conferred by section 1170 for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  "[A] trial court will

4

abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*) The "court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Reviewing judgments under this abuse of discretion standard, we presume trial courts act to achieve legitimate sentencing objectives. (*Ibid.*)

The court did not abuse its discretion in sentencing appellant to 11 years in prison. Before reaching sentencing, the court summarized the facts of the murder, including how the fight occurred in Blood gang territory and appellant's gang slurs. It then properly weighed defendant's lack of criminal history against the "senseless violence" he instigated. The court highlighted four aggravating factors. First, "Mr. Horn was a vulnerable victim" because he was unarmed and "caught by surprise." Second, appellant "was an active participant in the killing of Mr. Horn . . . [whose] death is inextricably intertwined with Mr. Gardner's transgressions." Third, appellant "is sophisticated in criminality . . . [because] [h]e was directly involved with orchestrating a fight that turned into a killing." Finally, the court noted appellant "does not appear remorseful." It also mentioned three mitigating factors: appellant "ha[d] no criminal record"; a witness claimed appellant was "willing to comply with the terms of probation"; and he appeared to be "able to comply with the terms of probation." At no point in discussing the sentence did the court mention facts supporting a gang enhancement, or a finding of malice aforethought. As a result, appellant's claim that the court erred in sentencing because it relied on these facts is without merit.

However, assuming the court relied on such facts, it did not abuse its discretion. "Both the United States Supreme Court and [the California Supreme Court] have expressly held that a trial court, in exercising its discretion in sentencing a defendant on an offense of which he or she has been convicted, may take into account the court's own factual findings with regard to the defendant's conduct related to an offense of which the defendant has been acquitted, so long as the trial court properly finds that the evidence

5

establishes such conduct by a preponderance of the evidence." (*In re Coley* (2012) 55 Cal.4th 524, 557 [affirming conviction and sentence where court relied upon facts underlying charge of which defendant was acquitted].)  The evidence here showed that appellant asked Mr. Johnson to bring a gun to the fight, then instructed him to use it.  It also demonstrated that appellant made gang slurs just before the killing.  Even though the jury did not credit this evidence with a true finding on the gang allegation or a murder conviction, the trial court could properly find the facts true under the preponderance of the evidence standard.  Accordingly, we find no abuse of discretion in the court's sentencing decision.

## DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**



EPSTEIN, P. J.


We concur:




WILLHITE, J.




MANELLA, J.

6