Filed 11/4/14  P. v. Greenwade CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060581 |
| v. | (Super.Ct.No. FBA1200001) |
| CHERYL RANAE GREENWADE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Rodney A. Cortez, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Cheryl Ranae Greenwade not guilty of first or second degree murder (Pen. Code, § 187, subd. (a))[1] but convicted her of the lesser included offense of voluntary manslaughter (§ 192, subd. (a)). In addition, the jury found that defendant had used a deadly weapon, namely a knife, in the killing of the victim. (§ 12022, subd. (b)(1).) The trial court sentenced defendant to the upper term of 11 years, with a one-year weapon enhancement.

On appeal, defendant contends the trial court abused its discretion by imposing the maximum sentence allowed by law. We disagree and affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2011, defendant and Russell Allen Clark (the victim), who had been her cohabitant and significant other for more than a decade, began squabbling after defendant had been drinking heavily. Their relationship had already seen acts of violence by defendant toward the victim, evidence regarding at least one of which was admitted at trial. On the night of the crime at issue here, the couple's 14-year-old daughter offered to watch the 18-month-old daughter of defendant's adult son. Defendant proceeded to pick a fight with the victim in front of their daughter.

During the fight, defendant, who is bipolar and had previously been hospitalized after suicide attempts, obtained an extension cord and appeared to be contemplating using it to injure or kill herself. The daughter convinced defendant not to harm herself, but

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

2

defendant only abandoned the electrical cord after becoming extremely angry at the victim, who had told their daughter that she did not need to listen to what defendant was saying. Next, defendant grabbed a kitchen knife and held it to her own throat, pressing as if to cut herself but doing so only lightly. The daughter did not perceive defendant to actually intend to kill herself. At the victim's request, defendant's daughter took the baby to another room of the house after defendant threw the knife, which glanced off the victim's back. The daughter grew alarmed and called defendant's son from the other room, where she heard defendant yelling that she had "killed dad."

Having heard these words, the daughter returned to where her parents were to find her father standing but bleeding heavily from his neck. Defendant was pacing in circles but did not get bandages for the victim, who had already gotten himself a towel. The daughter tried to ask neighbors for help and then called 911. Defendant made no attempt to call 911.

At the daughter's request, defendant's son arrived at the residence to find the victim in a pool of blood with a large gash on his neck. The daughter and the baby were also covered in blood. Defendant, who smelled strongly of alcohol, was near the victim but did nothing to assist him. In fact, defendant's son had to stop assisting the victim to physically remove defendant from his location multiple times while she yelled angrily at him that the victim, who was still moving and speaking, was already dead. Eventually, defendant remained lying in a doorway, emotionless. She told her son that she meant to stab the victim, but not in the neck.

3

Pursuant to the 911 call the daughter made, an ambulance arrived at the scene. Sometime after the ambulance arrived, law enforcement appeared on the scene and arrested defendant. The first officer to respond testified to seeing large puddles of blood on the floor, bloody footprints indicating that one of the family members had walked through them, and a blood smear on the wall. Defendant admitted to the officer that she had stabbed the victim, as well as that she had not taken medication prescribed for bipolar disorder in several days.

Before the victim died, he told his daughter, who came to his side at his request, that he loved her, that she should not worry about him, and that he "had fun." Despite being airlifted for medical assistance, the victim died at the hospital from blood loss.

## ANALYSIS

We review a trial court's sentencing order for abuse of discretion. (§ 1170, subd. (b) ["When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court"]; *People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*) [noting trial court's discretion is "broad"].) We ground our inquiry in two well-established principles. First, defendant bears the burden of showing that the trial court's decision was "irrational or arbitrary," and we will presume the trial court "acted to achieve legitimate sentencing objectives" should she fail to make the necessary showing. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) Second, we will not reverse the trial court's order if all defendant shows is that reasonable people might disagree about its

4

propriety.  (*Id.* at p. 377.)  "Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Ibid.*)

Subject to exceptions not relevant here (see Cal. Rules of Court, rule 4.420(c), (d)), a trial court may sentence a defendant to the upper term if it finds that any aggravating circumstance exists (*Sandoval*, *supra*, 41 Cal.4th at p. 848).  Aside from specific prohibitions described in the California Rules of Court, "[t]he court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.'  (Cal.  Rules of Court, rule 4.408(a).)"  (*Ibid.*)  In other words, while defendant is correct that *Sandoval* authorizes appellate review of sentencing decisions for abuse of discretion, the opinion emphasizes that the trial court's discretion will only be abused if the court fails to exercise discretion or relies on irrelevant or improper circumstances in aggravation.  (*Id.* at pp. 847-848 & fn. 10 [trial court has discretion to identify and balance mitigating and aggravating factors].)

Under California's sentencing law, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  (§ 1170, subd. (b).)  Ultimately, "[t]he court shall select the term which, in the court's discretion, best serves the interests of justice."  (*Ibid.*)  Since voluntary manslaughter is subject to punishment of three, six, or 11 years (§ 193, subd. (a)), the trial court had discretion to impose any of these three

5

terms. On appeal, a single factor in aggravation will support a trial court's imposition of the upper term. (*Sandoval*, *supra*, 41 Cal.4th at p. 848.) Here, the trial court identified several aggravating factors before sentencing defendant to the upper term. More specifically, it emphasized that the crime involved great bodily harm, and that defendant had used a weapon in the homicide. (Cal. Rules of Court, rule 4.421(a)(1), (a)(2).) In addition, the court found that defendant had "engaged in violent conduct that indicates a serious danger to society" (Cal. Rules of Court, rule 4.421(b)(1)), both because she had previously committed acts of violence against the same victim and because his murder occurred while two minors were present in the residence (Cal. Rules of Court, rule 4.408(a) [trial court may rely on non-enumerated aggravating circumstances]). As the trial court identified multiple aggravating factors and defendant's attacks on its reasoning fail for reasons discussed immediately *post*, we find no abuse of discretion.

Defendant complains the trial court and the probation officer disagreed with the jury's decision to acquit her of murder and allowed their disappointment to color their decisions regarding what sentence would be appropriate. However, "[n]othing in the applicable statute or rules suggests that a trial court must ignore evidence related to the offense of which the defendant was convicted, merely because that evidence did not convince a jury that the defendant was guilty beyond a reasonable doubt of related offenses." (*People v. Towne* (2008) 44 Cal.4th 63, 85-86.)

Next, defendant argues the trial court inappropriately compared her case to an incident that occurred in the judge's own family. We disagree. While the trial judge

6

noted that he had "a similar type of experience" to that which the victim's family was undergoing, he did so only in the context of an advisement to them that they let go of any hate they were feeling and turn to each other for support. Nothing in the transcript from the sentencing hearing demonstrates that the court's determination about the appropriate sentence hinged on comments regarding the judge's personal history.

Finally, defendant asserts that the trial court relied on the probation report despite the probation officer's obvious bias against her, as well as it blamed her for her bipolar disorder and accused her of manipulating her family when the evidence at trial did not support such a conclusion. According to defendant, the facts that she was intoxicated and off her medication when she killed the victim, that she had no significant prior record, and that she made an early admission of guilt mean that imposition of the upper term is unjustifiable. Defendant's allegations about bias on the part of the court or the probation officer fail for two main reasons.

First, section 1170, subdivision (b), explicitly encouraged the trial court to consider the probation report. We therefore discern no error in the court's decision to rely heavily on what the probation officer recommended.

Second, substantial evidence supports the trial court's and probation officer's conclusions about defendant. That she was manipulative was substantiated by several pieces of evidence in the record. For example, in her recorded interview with the police immediately after the stabbing, which the jury heard, defendant admitted that she did not know why she started the fight with the victim, that her reason was probably "stupid,"

7

that she was a "handful" and did not understand why the victim put up with her; that she did not know why she held a knife to her own throat, and that she did not actually want to die the first time she attempted suicide. Testimony from one of the investigating officers confirmed that the scratches defendant caused on her own neck by holding the knife to her throat were very shallow, and witnesses unanimously confirmed that defendant was an extremely heavy drinker. Witnesses also testified that defendant had previously attempted suicide, and the daughter who was present when defendant held a knife to her own throat stated that she never thought her mother actually intended to harm herself. In addition, defendant's own statements that she knew she should not drink due to potential adverse effects with the medications she took for bipolar disorder shore up the conclusion that she was culpable for her own mental state at the time of the killing.

In short, the conclusions the judge and probation officer made were justified and offer no basis for defendant's accusations of bias. Before it imposed sentence, the trial court noted the existence of mitigating factors, such as defendant's alcoholism and bipolar disorder, but it found them less weighty than the aggravating factors discussed *ante*. "'We do not reweigh or reinterpret the evidence'" (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1545-1546), and defendant offers, and we discern, no reason why assigning this degree of importance to the factors defendant asserts in mitigation fell outside the bounds of the court's discretion.

8

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

9