Filed 9/16/15  P. v. Rucker CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B256279 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA070942) |
| v. | |
| DARRELL RUCKER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jesse I. Rodriguez, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Mary Sanchez, and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Darrell Rucker, Sr. was convicted of voluntary manslaughter for killing Malcolm Youngblood. In a previous appeal, this court determined that there had been insufficient evidence to support the court's finding that Rucker had suffered a prior juvenile adjudication that qualified as a strike prior. (*People v. Rucker* (May 21, 2013, B237359) [nonpub. opn.].) Rucker appeals from his subsequent resentencing. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Darrell Rucker, Sr. shot and killed his nephew Malcolm Youngblood on July 10, 2006. He was tried and convicted of murder, but that conviction was reversed on appeal. (*People v. Rucker* (Dec. 15, 2009, B203503) [nonpub. opn.] (*Rucker I*).) At retrial, the prosecution presented evidence that Rucker shot Youngblood multiple times without provocation after Youngblood complained about a malfunctioning car that Rucker had sold him. (*People v. Rucker* (May 21, 2013, B237359) [nonpub. opn.] (*Rucker II*), at p. 2.) Rucker claimed that he acted in self-defense and to defend his son: Youngblood had threatened him and a mechanic friend days before the shooting, and on the morning of the shooting Youngblood threatened him again, leading to a moment when Rucker believed Youngblood was holding or was reaching for a weapon to shoot Rucker and Rucker's son. (*Ibid*.) The jury was instructed on first degree murder, second degree murder, manslaughter (heat of passion and imperfect self-defense), and justifiable homicide in self-defense or defense of another. (*Id*. at pp. 2-3.)

Rucker was convicted of voluntary manslaughter (Pen. Code,[1] § 192, subd. (a)), and the jury found true the allegation that he personally used a firearm in the commission of the offense within the meaning of section 12022.5. He was sentenced to a term of 32 years in state prison: the upper term of 11 years for the voluntary manslaughter, doubled under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), plus the consecutive upper term of 10 years for the firearm enhancement. He appealed his

---

[1] All further statutory references are to the Penal Code.

2

conviction and sentence on multiple grounds, and this court determined that that the evidence was insufficient to support the court's finding that Rucker suffered a prior juvenile adjudication within the meaning of the "Three Strikes" law. (*Rucker II*, *supra*, at pp. 12-14.) We reversed the finding on the strike prior and remanded the matter to the trial court. (*Id*. at p. 14.)

In further trial court proceedings regarding the prior juvenile adjudication, the prosecutor advised the court that she had determined that the offense in question did not legally constitute a strike. Accordingly, the court resentenced Rucker on the manslaughter offense and the gun use enhancement. At the resentencing hearing, the prosecutor argued for upper term sentences because the crime was "an execution murder. A completely unarmed, vulnerable victim. It was extremely callous and unprovoked." Rucker's attorney argued that the killing was not a murder but a manslaughter, and that by virtue of the verdict it was clear that the jury believed "some of Mr. Rucker's statements about his fear and how he felt at the time of the shooting." He advocated for midterm sentences on both the voluntary manslaughter conviction and the enhancement.

The court imposed upper term sentences of 11 years on the voluntary manslaughter conviction and 10 years on the enhancement, for an aggregate term of 21 years in state prison. The court made a detailed statement of the reasons for its sentencing choice: "The court has selected the upper term because the court believes in this case the victim was a 18-year-old boy, young man, the defendant's nephew, living at his home. He had just woken up, not armed, pleading after the first shot for his life, which was not a fatal wound, saying, 'I'm sorry. I'm sorry.' Then, according to my memory, the defendant went on to shoot him four more times, perhaps one of them in the back. The crime involved great violence, disclosing a high degree of cruelty, viciousness, and callousness. The victim was not armed, was vulnerable, and the court does not find an iota—if I could find something even smaller, I would. I don't find anything mitigating on the defendant's behalf. [¶] The crime was committed in front of his own son, teenage son. And I want to repeat what I said before, That young man, his son, was a very young boy, very innocent, what I call having a virgin mind. A 19-year-

old boy.  And from what I initially heard through the interviews that we played to the jurors, that young man had a good sound mind and good morals, at least just moments before the time of this incident.  [¶]  In terms of cruelty, viciousness, and callousness, the defendant tells his son, either you weren't there or you didn't see anything, attempting to make his son complicit in the killing of the defendant's nephew.  And then—and then, later on, invite his own son to lunch or dinner, as if he had just gone to the market for some meat shopping or for some sight[-]seeing or Sunday drive.  That's why the court believes that there's no mitigating circumstance as to this defendant."

The trial court also found further circumstances in aggravation:  "[T]he court believes that plan[ning], sophistication and professionalism [were] demonstrated by the defendant's acts, physical and oral[;] the defendant furthermore took advantage of a position of trust.  The court is fully aware that the court only has to state one item in aggravation.  The court has listed probably four or five, if not more.  The court can continue listing more items in aggravation."

Rucker appeals his sentence.

## DISCUSSION

### I.      Sixth Amendment

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, the United States Supreme Court held:  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Rucker argues that the trial court violated his right to a jury trial under the Sixth Amendment to the United States Constitution when it imposed the upper terms on his conviction and enhancement "based on aggravating reasons anchored solely in the court's own judicial fact-finding about the crime itself."

Rucker's argument is foreclosed by decisional and statutory law.  The Supreme Court has held that because under California sentencing law the upper term was the statutory maximum, the trial court could consider any facts in the exercise of its sentencing discretion without violating the Sixth Amendment.  (*People v. Sandoval*

4

(2007) 41 Cal.4th 825, 842-852; see also *People v. Jones* (2009) 178 Cal.App.4th 853, 867 (*Jones*).)  While the trial court was required to exercise its discretion in selecting between the low, middle, and upper sentences, no additional factual finding was necessary in order for the court to impose a lower or upper term.  (§ 1170, subd. (b); see also *Sandoval*, at pp. 843-845.)

## II.      Exercise of Sentencing Discretion

Rucker argues that the trial court abused its discretion when it imposed the upper terms on the offense and enhancement.  A trial court's sentencing discretion "must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'"  (*Sandoval*, *supra*, 41 Cal.4th at p. 847.)  A court abuses its discretion if it fails to exercise its discretion or relies upon irrelevant or improper circumstances.  (*Id.* at pp. 847-848.)  A court's sentencing decision will not be disturbed on appeal unless it is so irrational or arbitrary that no reasonable person could agree with the ruling.  (*People v. Carmony* (2004) 33 Cal.4th 367, 377; *Jones*, *supra*, 178 Cal.App.4th at p. 860; see also *Sandoval*, *supra*, 41 Cal.4th at p. 847.)  The appellant bears the burden of showing the sentence was irrational or arbitrary, and the appellate court will not substitute its judgment for that of the trial court.  (*Jones*, *supra*, 178 Cal.App.4th at p. 861.)

Here, the trial court selected the upper terms because there were multiple aggravating circumstances and no factors in mitigation.  Rucker argues that the court abused its discretion in selecting the upper terms because the trial court's assessment of the shooting as demonstrating planning, sophistication, and professionalism were contradicted both by the jury's verdict that the offense was voluntary manslaughter and by the evidence presented at trial that Rucker killed Youngblood in the heat of passion. The trial court was entitled to consider at resentencing evidence of a factor in aggravation even if the jury did not find it to be true beyond a reasonable doubt.  (*People v. Towne* (2008) 44 Cal.4th 63, 83-89; § 1170, subd. (b) [in determining the appropriate term of

5

imprisonment, the court may consider, inter alia, the record, probation reports, statements in aggravation and mitigation, and evidence presented at the sentencing hearing].) Evidence was presented at trial that, shortly prior to shooting Youngblood, Rucker unloaded his gun, instructed his son to put on gloves and to handle the gun, then reloaded the gun; that he spoke more with Youngblood, never raising his voice; and that he went into his bedroom, waited several minutes, then emerged and shot Youngblood. Accordingly, the court could reasonably conclude that the manner in which Rucker killed Youngblood demonstrated planning, sophistication, or professionalism.

### III.    Ineffective Assistance of Trial Counsel

Rucker finally contends, via supplemental opening brief, that his trial counsel was ineffective for failing to present argument on mitigating factors. Specifically, Rucker asserts that counsel should have argued to the court that the crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur (Cal. Rules of Court, rule 4.423(a)(3)); that Rucker's prior criminal record was relatively insignificant (Cal. Rules of Court, rule 4.423(b)(1)); and that Rucker had been gainfully employed as a property manager and a licensed small-business owner prior to the offense.

"A meritorious claim of constitutionally ineffective assistance must establish both: '(1) that counsel's representation fell below an objective standard of reasonableness; *and* (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.] If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails. Moreover, "'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' [Citation.]"' [Citation.]" (*People v. Holt* (1997) 15 Cal.4th 619, 703.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

We first note that with respect to the first factor of mitigation, an unusual circumstance, such as great provocation, that is unlikely to recur (Cal. Rules of Court,

rule 4.423(a)(3)), the transcript from the sentencing hearing shows that defense counsel did raise this issue at sentencing. Defense counsel pointed out that Rucker was convicted of manslaughter rather than murder and argued that the jury's verdict signified that the crime was not the "cold and callous" murder that the prosecution claimed it to be. Instead, counsel reminded the court, the jury convicted Rucker of manslaughter, which showed that the jury believed and credited Rucker's "statements about his fear and how he felt at the time of the shooting." While counsel did not expressly refer to provocation as a mitigating factor, counsel's statements reflect that he was asking the court, which was clearly conversant with the evidence and details of the case, to consider Rucker's mental state as evidenced by the jury's manslaughter verdict as a factor in his favor at sentencing.

Even were that not the case, Rucker has failed to demonstrate a reasonable probability that an outcome more favorable him would have been reached if his counsel had presented a more detailed argument about provocation or had argued that his prior criminal history and his employment history were factors in mitigation. The trial court's comments at the resentencing hearing demonstrate that the court was fully aware of the facts of the case and was familiar with the evidence presented at trial. Immediately before resentencing Rucker, the court and the parties had discussed Rucker's only alleged strike prior, a juvenile adjudication for robbery, and they had agreed that the offense did not constitute a strike based on the law in effect at the time of the offense because it did not involve a weapon. Defense counsel, moreover, reminded the court that the jury had accepted Rucker's theory that the killing was a manslaughter rather than a murder and argued that this should guide the court at sentencing. The trial court, however, was resolute in its conclusion that there were no mitigating factors. The court described the crime in detail, relating how Rucker shot his young nephew once, not fatally, and then ignored Youngblood's cries of "I'm sorry," and shot him four more times—all in front of Rucker's teenaged son. The court found the crime to be greatly violent; to disclose a high degree of cruelty, viciousness, and callousness; to reflect planning, sophistication, and professionalism; to involve taking advantage of a position of trust; and to have been

committed against a vulnerable victim; and it spoke about Rucker's behavior after the crime—making his son complicit in the killing and inviting him out to a meal that day as if nothing had happened—as a reason that he believed that there was truly no mitigating circumstance relating to Rucker. The court commented that although it had listed multiple aggravating factors, it could list even more if that were necessary. In light of the court's assessment that the crime involved an extensive array of aggravating factors, it is not reasonably possible that Rucker would have received a more favorable sentence if counsel had argued the remoteness or relative insignificance of Rucker's other criminal history, mentioned his employment history, or presented a more detailed argument about provocation. Accordingly, Rucker's claim of ineffective assistance of counsel fails. (*People v. Holt*, *supra*, 15 Cal.4th at p. 703.)

## DISPOSITION

The judgment is affirmed.

ZELON, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

8