# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

ERIC DAVID WILEY,
Defendant and Appellant.

S283326

First Appellate District, Division Four
A165613

Humboldt County Superior Court
CR1902147B and CR2101049

---

June 26, 2025

Justice Corrigan authored the opinion of the Court, in which Chief Justice Guerrero, Justices Liu, Groban, and Evans concurred.

Justice Kruger filed a concurring opinion, in which Justice Jenkins concurred.

---

PEOPLE v. WILEY

S283326


Opinion of the Court by Corrigan, J.


Here we hold that the trial court violated defendant Eric Wiley's federal constitutional right to a jury trial by adjudicating underlying facts related to his prior convictions and improperly relying on its conclusions in choosing to impose an upper term sentence.  This result is compelled by the recent case of *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*). *Erlinger* considered the scope of the jury trial guarantee discussed in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*) and the prior conviction exception recognized in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 (*Almendarez-Torres*).  The majority held that, under the Fifth and Sixth Amendments,[1] "a judge may 'do no more . . . than determine what crime, with what elements, the defendant was convicted of.' " (*Erlinger*, at p. 838, quoting *Mathis v. United States* (2016) 579 U.S. 500, 511–512 (*Mathis*).)

*Erlinger* requires us to overrule our decisions in *People v. Towne* (2008) 44 Cal.4th 63 (*Towne*) and *People v. Black* (2007) 41 Cal.4th 799 (*Black*), which construed the *Almendarez-Torres* prior conviction exception more broadly than *Erlinger* now

---

[1]    While the essential components of a jury trial are secured by both the Fifth and Sixth Amendments (*Erlinger, supra*, 602 U.S. at pp. 830–831), for the sake of brevity we will sometimes refer to it as the Sixth Amendment guarantee.

1

allows. *Erlinger* also bears on the application of Penal Code[2] section 1170, subdivision (b)(3)'s provision governing proof of prior convictions. We interpret that section to reflect *Erlinger*'s clarification of federal constitutional guarantees.

*Erlinger* held that a defendant is entitled to have a jury determine whether multiple prior convictions occurred on separate occasions under the provisions of the Armed Career Criminal Act of 1984 (18 U.S.C. § 924(e)). (*Erlinger*, *supra*, 602 U.S. at pp. 833–835, 838–839.) The trial court here sentenced Wiley to an upper term based on two different aggravating facts: the increasing seriousness of his prior convictions and his unsatisfactory performance on previous grants of probation. Although *Erlinger* involved a different kind of sentencing consideration, its analysis compels the conclusion that Wiley was entitled to a jury trial on these aggravating facts as well, and the failure to afford one was error of a constitutional dimension. Because we find that error prejudicial, we reverse the judgment of the Court of Appeal, which upheld Wiley's sentence, and remand the matter to that court.

## I. BACKGROUND

In January 2020, Wiley pled guilty to feloniously making a criminal threat. (§ 422.) The trial court imposed an upper term prison sentence of three years, suspended execution of that sentence, and placed Wiley on probation for three years. In March 2022, while on probation, Wiley pled guilty to a new charge of being a felon in possession of a firearm (§ 29800, subd. (a)(1).) The trial court also found that he had violated the terms of his 2020 probation and revoked that grant. On July 1, 2022,

---

[2] All further undesignated statutory references are to the Penal Code.

the court sentenced Wiley on the new possession conviction and resentenced him on the probation revocation. As to the criminal threat, it again imposed the upper term of three years in prison and added a consecutive term of eight months for the firearm possession. (§ 1170.1, subd. (a).) To justify the upper term, the court cited Wiley's "prior convictions, [his] poor performance on probation, and the fact that the charges are becoming more serious."[3]

The Court of Appeal upheld Wiley's sentence over his Sixth Amendment challenge. (*People v. Wiley* (2023) 97 Cal.App.5th 676, 680, 682–683, 688 (*Wiley*).) It rejected the argument that the trial court engaged in impermissible factfinding when it determined Wiley's felony convictions were of increasing seriousness and his prior performance on probation was poor, rather than submitting those questions for a jury determination. Applying this court's decisions in *Towne*, *supra*, 44 Cal.4th 63 and *Black*, *supra*, 41 Cal.4th 799, the Court

---

[3] Wiley was convicted by plea in both cases. Neither plea included an agreement to an upper term sentence. The 2020 agreement called for probation with no jail time. Wiley argued against imposing any sentence at that time, but, over his objection, the trial court instead imposed a three-year sentence, with execution suspended. In 2022, the court did not simply execute the previously imposed three-year term, but rather sentenced Wiley anew in recognition of the ameliorative changes made to section 1170, subdivision (b). (See *People v. Esquivel* (2021) 11 Cal.5th 671, 673, 677–680.) The plea bargain on the new case did provide for an eight-month subordinate consecutive term for firearm possession, but it did not specify a negotiated base term sentence on the criminal threats conviction. Accordingly, the trial court was required to justify imposition of an upper term sentence based on a finding of aggravating facts.

of Appeal held the Sixth Amendment permitted the judge to make those determinations because they related to Wiley's recidivism. (*Wiley*, at pp. 682–683.)

The Court of Appeal also rejected Wiley's contention that the trial court's factfinding exceeded the scope of the prior conviction exception provided for by section 1170, subdivision (b)(3) (section 1170(b)). (*Wiley*, *supra*, 97 Cal.App.5th at pp. 684–686.) It held the statute is consistent with Sixth Amendment jurisprudence establishing " ' "the right to a jury trial does not apply to the fact of a prior conviction." ' " (*Wiley*, at pp. 683–684, quoting *People v. Pantaleon* (2023) 89 Cal.App.5th 932, 938 (*Pantaleon*).) It reasoned that "[t]he statute does not specify the court is limited to finding that a prior conviction occurred; instead, it states the court may 'consider the defendant's prior convictions in determining sentencing.' [Citation.] And, as our Supreme Court has recognized in the context of the prior conviction exception to the constitutional jury trial right, consideration of prior convictions may establish recidivism-based aggravating factors such as increasing seriousness of the convictions [citation] or prior unsatisfactory performance on probation or parole [citation]. The statutory language does not suggest the Legislature sought to depart from our Supreme Court's constitutional jurisprudence on this point by establishing a significantly narrower *statutory* prior conviction exception." (*Wiley*, at p. 686.)

We conclude the Court of Appeal's reasoning is inconsistent with the high court's holding in *Erlinger*. Although *Erlinger* involved a different sentencing consideration, its analysis of the federal Constitution's jury trial right requires that a jury determine whether the particular details of a

defendant's criminal history establish an unsatisfactory probation performance or demonstrate convictions of increasing seriousness, before a trial court can rely on those facts to justify an upper term sentence.

## II. DISCUSSION

Under the Fifth and Sixth Amendments to the United States Constitution, "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281 (*Cunningham*); accord, *Erlinger, supra*, 602 U.S. at pp. 830–832.) "Inhering in that guarantee is an assurance that a guilty verdict will issue only from a unanimous jury." (*Erlinger*, at p. 830; accord, *Ramos v. Louisiana* (2020) 590 U.S. 83, 90, 92–93.)

Section 1170(b)(2) similarly provides that the trial court may impose a sentence exceeding the middle term only when circumstances in aggravation of the crime justify imposition of an upper term sentence, and "the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt" at a jury or court trial. Construing this statutory scheme in light of the high court's holding in *Cunningham*, *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) held that this jury trial right is not merely a state law entitlement, but is constitutionally required for all aggravating facts, other than a prior conviction, relied upon to justify an upper term sentence. (*Id.* at pp. 755–767.)

The exception to the jury trial right for "the fact of a prior conviction" has long been recognized in the high court's precedent. (*Apprendi, supra*, 530 U.S. at p. 490; accord,

*Almendarez-Torres*, *supra*, 523 U.S. at pp. 243–244, 247.) Section 1170(b)(3) likewise allows the court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

At issue here is just how broadly the concept of "the fact of a prior conviction" is to be understood and the extent of the *Almendarez-Torres* exception. Specifically, in considering a defendant's criminal convictions, is the court limited to deciding what crimes a defendant has previously committed and the elements of those crimes? Or, may the court make other factual determinations relating to those prior crimes and the defendant's recidivism, without running afoul of the Sixth Amendment or section 1170(b)'s jury trial provisions?

### A. *The Federal Constitutional Jury Trial Right and the* Almendarez-Torres *Exception for Prior Convictions*

We look first to the federal constitutional jury trial entitlement.[4] The prior conviction exception derives from *Almendarez-Torres*, *supra*, 523 U.S. 224. There, the defendant was convicted of unlawfully reentering the United States after a prior deportation. Title 8 of the United States Code section 1326(b) provides for longer sentences if a defendant's prior deportation occurred after a qualifying conviction. The question

---

[4] As a general rule, "we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us." (*People v. Williams* (1976) 16 Cal.3d 663, 667; accord, *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230.) Here it is necessary to address the constitutional claim because the presence of a constitutional violation informs the standard for assessing prejudice. (*Lynch*, *supra*, 16 Cal.5th at p. 755.)

was whether this statutory provision "defines a separate crime" which includes, as an element, the existence of a qualifying prior conviction, or was simply a "penalty provision." (*Almendarez-Torres*, at p. 226.) The court concluded that due process did not require that the new indictment allege defendant had been convicted of a qualifying offense in order to give him proper notice of the new charges. (*Id.* at pp. 226–227, 229–235, 239–247.) It reasoned that "recidivism" is "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." (*Id.* at p. 243.)

The high court has repeatedly acknowledged the *Almendarez-Torres* holding as a narrow exception to the Sixth Amendment's jury trial right for sentencing-enhancing facts. "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490, italics added; accord, *Cunningham*, *supra*, 549 U.S. at pp. 274–275; *United States v. Booker* (2005) 543 U.S. 220, 231; *Blakely v. Washington* (2004) 542 U.S. 296, 301.) Subsequent high court opinions have arguably cast doubt on the exception's scope or validity, but ultimately have found it unnecessary to confront those questions. (See, e.g., *Pereida v. Wilkinson* (2021) 592 U.S. 224, 238 [describing *Almendarez-Torres* as "an unusual and 'arguable' exception to the Sixth Amendment rule"]; *Alleyne v. United States* (2013) 570 U.S. 99, 111, fn. 1 (*Alleyne*) [noting that the parties had not asked the court to revisit the validity of *Almendarez-Torres*]; *Apprendi*, at pp. 489, 490 [noting "it is arguable that *Almendarez-Torres* was incorrectly decided" but that "Apprendi does not contest the decision's validity and we need not revisit if for purposes of our decision today"]; see also

*Mathis*, *supra*, 579 U.S. at p. 522 (conc. opn. of Thomas, J.) [calling for *Almendarez-Torres* to be overruled].)

### 1. The High Court's Holding in *Erlinger*

*Erlinger*, *supra*, 602 U.S. 821, considered "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt." (*Id.* at p. 825.) In that case, the trial court, over objection, found that Erlinger had suffered four prior convictions for burglary " 'committed on occasions different from one another,' " thus increasing the sentencing range for the current offense from a maximum of 10 years to 15 years to life. (*Id.* at p. 825, quoting 18 U.S.C. § 924(e)(1); see also *Erlinger*, at pp. 826–827.)

The high court held that the trial court's factual finding on this requirement ran afoul of the Fifth and Sixth Amendments' jury trial guarantee. The court pointed out that the "separate occasions" inquiry is not as straightforward as it might appear. It "can require an examination of a 'range' of facts, including whether the defendant's past offenses were 'committed close in time,' whether they were committed near to or far from one another, and whether the offenses were 'similar or intertwined' in purpose and character." (*Erlinger*, *supra*, 602 U.S. at p. 828.) Surveying several of its past decisions in the face of "a variety of . . . recent sentencing innovations" (*id.* at p. 833), the court emphasized that it had "come to the same conclusion in one decision after another" (*id.* at p. 843) and forcefully stated its conclusion. "Virtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" '

must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." (*Id.* at p. 834.)

Turning to the *Almendarez-Torres* exception, the court observed that the holding had come under scrutiny (*Erlinger, supra,* 602 U.S. at pp. 837–838), but, as it had done before, it noted that "no one in this case has asked us to revisit *Almendarez-Torres*" (*id.* at p. 838). Nor had Erlinger challenged the trial court's authority to find that he had suffered four burglary convictions and that each qualified as a " 'violent offense.' " (*Id.* at p. 835.) But Erlinger did challenge the court's authority to find that his convictions occurred on separate occasions. On that score, the court rejected the argument advanced by court-appointed amicus curiae that the *Almendarez-Torres* exception "permits a judge to find perhaps any fact related to a defendant's past offenses," including that one. (*Id.* at p. 837.) Instead, it described *Almendarez-Torres* "as a 'narrow exception' permitting judges to find only 'the fact of a prior conviction.' [Citation.] Under that exception, a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' " (*Id.* at p. 838, quoting *Alleyne, supra,* 570 U.S. at p. 111, fn. 1 & *Mathis, supra,* 579 U.S. at pp. 511–512.)

In so holding, the court acknowledged that, "[t]o conduct the narrow inquiry *Almendarez-Torres* authorizes, a court may need to know the jurisdiction in which the defendant's crime occurred and its date in order to ascertain what legal elements the government had to prove to secure a conviction in that place at that time. And to answer those questions, a sentencing court may sometimes consult 'a restricted set of materials,' often called *Shepard* documents, that include judicial records, plea agreements, and colloquies between a judge and the defendant.

[Citations.] [¶] None of that, however, means that a court may use *Shepard* documents or any other materials for any other purpose. To ensure compliance with the Fifth and Sixth Amendments, a sentencing judge may use the information [gleaned] from *Shepard* documents for the 'limited function' of determining the fact of a prior conviction and the then-existing elements of that offense. [Citation.] '[N]o more' is allowed." (*Erlinger*, *supra*, 602 U.S. at p. 839.)[5]

Applying these principles, the high court held that the trial court exceeded *Almendarez-Torres*'s narrow exception by finding that Erlinger's offenses occurred on separate occasions. (*Erlinger*, *supra*, 602 U.S. at p. 840.) To determine whether the convictions triggered an enhanced penalty, the trial court "had to do more than identify his previous convictions and the legal elements required to sustain them. It had to find that those offenses occurred on at least three separate occasions." (*Id.* at pp. 838–839.) That finding, in turn, required a qualitative assessment of the offenses' "time, location, character, and purpose." (*Id.* at p. 840.) "The Fifth and Sixth Amendments 'contemplat[e] that a jury — not a sentencing court — will find

---

[5] The articulated limitation on a trial court's permissible use of "*Shepard* documents" seems to make clear that a California trial court's reliance on information in a probation department presentence report (see § 1203, subd. (b)(1)) to impose an upper term sentence is now precluded. (*Erlinger*, *supra*, 602 U.S. at pp. 839–842; see also § 1170(b)(3) [requiring that prior convictions be established by a certified record of conviction].) As a general matter, it does not appear that the trial court is prevented from considering the report's contents in deciding other issues, such as whether to impose a lower or midterm sentence, or to exercise its discretion to withdraw its conditional approval of a bargain. (See *People v. Stamps* (2020) 9 Cal.5th 685, 705–706.)

such facts, unanimously and beyond a reasonable doubt.' " (*Ibid*.) This is true notwithstanding that the inquiry will in many cases be " ' "straightforward." ' " (*Id*. at p. 842.) The court explained: "Often, a defendant's past offenses will be different enough and separated by enough time and space that there is little question he committed them on separate occasions. But none of that means a judge rather than a jury should make the call. There is no efficiency exception to the Fifth and Sixth Amendments. In a free society respectful of the individual, a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers ' "regardless of how overwhelmin[g]" ' the evidence may seem to a judge." (*Ibid*.)

> ### 2. Absent Waiver or Stipulation, the Increasing Seriousness of Prior Convictions and the Defendant's Unsatisfactory Performance on Probation Must Be Found by a Jury

Under the principles articulated in *Erlinger*, both parties agree that the Sixth Amendment requires a jury determination of the two aggravating facts at issue here: the "increasing seriousness" of a defendant's prior convictions (Cal. Rules of Court, rule 4.421(b)(2)) and "unsatisfactory" "performance on probation" (*id*., rule 4.421(b)(5)), before those facts can be used to justify an upper term sentence. We agree as well.

Under current case law, the determination that a defendant's prior convictions are of increasing seriousness may be made by "reference to the range of punishment provided by statute for each offense." (*Black*, *supra*, 41 Cal.4th at p. 820.) Or it may be determined by "a comparison of the offenses' respective elements." (*People v. Quiles* (2009) 177 Cal.App.4th

612, 622.)**[6]** By either measure, the inquiry requires a comparison and evaluation of the relationship among a defendant's prior convictions, and a determination as to their relative seriousness. As a result, it involves something more than a narrow factual finding that the convictions were sustained and what elements were required to prove them. *Erlinger* makes clear that, under its interpretation of the Sixth Amendment, that narrow finding is as much, and all, the *Almendarez-Torres* exception allows. (*Erlinger*, *supra*, 602 U.S. at pp. 838–839.) Indeed, the inquiry here is similar to the finding at issue in *Erlinger* that the defendant's offenses occurred on separate occasions. As noted, *Erlinger* held the finding implicates the jury trial right because it requires a qualitative assessment of the offenses' "time, location, character, and purpose." (*Id.* at p. 840.) The Attorney General concedes that a similar conclusion follows here with respect to the factual finding that a defendant's offenses are increasing in seriousness.

We reach a similar conclusion with respect to the aggravating fact that the defendant performed unsatisfactorily on probation. Under current case law, this fact may be proved "by evidence demonstrating that, while previously on probation or parole, [the defendant] committed and was convicted of new offenses." (*Towne, supra*, 44 Cal.4th at p. 82.) Alternatively, proof may be "based upon other evidence of misconduct that was not previously adjudicated in a criminal trial" such as evidence that the defendant "did not appear for appointments, failed a drug test, or stopped attending counseling sessions as directed."

---

**[6]** Both parties accept these criteria for purposes of resolving the arguments before us.

(*Ibid.*)  The latter circumstances clearly go beyond the fact of prior conviction and its elements.  (*Id.* at pp. 82–83.)  And even where a finding of unsatisfactory probation performance is based on conviction of a new offense, it is not strictly limited to that fact.  Rather, it must be proven that the defendant was ordered to serve a term of probation and remained on probation at the time he or she committed the new offense.  These facts, too, go beyond the mere existence of a prior conviction and its elements.  (See *Erlinger*, *supra*, 602 U.S. at p. 838.)  Again, the Attorney General concedes the point.

It could be argued that there is a difference between a strictly factual determination as to whether a defendant suffered a particular previous conviction and a more nuanced discretionary and normative judicial judgment evaluating whether those convictions were of "increasing seriousness" (Cal. Rules of Court, rule 4.421(b)(2)), or whether the fact of those convictions, along with other customary relied-upon sources like a presentencing memo from the probation department, showed that the defendant's previous probation performance was satisfactory or poor (*id.*, rule 4.421(b)(5)).  For example, suppose there was a proper determination of the following facts:  the defendant had been convicted of disturbing the peace five years ago, misdemeanor assault four years ago, felony assault three years ago, and murder two years ago.  Suppose further that the record established by admissible documents that the defendant had violated his probation several times in connection with the first three convictions.  In light of those proper factual findings by an appropriate factfinder, could the court determine that the convictions were of increasing seriousness or that his probation performance was poor? As we read *Erlinger*, it appears that the high court would firmly say no.  We understand *Erlinger* to

require that any fact, beyond the bare fact of a prior conviction, that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth or waives a jury trial.  This jury trial guarantee retains its vitality even if the inquiry is " ' "straightforward." ' "  (*Erlinger*, *supra*, 602 U.S. at p. 842.) "There is no efficiency exception to the Fifth and Sixth Amendments." (*Ibid*.)  Only when aggravating facts have been proven as the Constitution requires may the court then rely on them to conclude, in its discretion, that those facts justify an upper term.

This conclusion requires us to overrule our contrary holdings in *Black*, *supra*, 41 Cal.4th 799 and *Towne*, *supra*, 44 Cal.4th 63, which predate *Erlinger*'s clarification by nearly two decades.  Those decisions broadly construed *Apprendi*'s exception to the jury trial right for "the fact of a prior conviction" (*Apprendi*, *supra*, 530 U.S. at p. 490) to encompass "other related issues" (*Black*, at p. 819) concerning a "defendant's criminal history" or " '[r]ecidivism' " (*id*. at p. 818; accord, *Towne*, at pp. 75–81).

Specifically, *Black* held that the finding at issue there as to the "increasing seriousness" of the defendant's prior convictions did not require a jury determination.  It reasoned, "The relative seriousness of these alleged convictions may be determined simply by reference to the range of punishment provided by statute for each offense.  This type of determination is 'quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken

14

by a court.' " (*Black*, *supra*, 41 Cal.4th at p. 820, quoting *People v. McGee* (2006) 38 Cal.4th 682, 706.)[7]

*Towne* held that a finding of unsatisfactory probation performance did not require a jury trial, so long as it was based on the defendant's conviction for a new offense during the probationary period. (*Towne*, *supra*, 44 Cal.4th at p. 82.) It reasoned, "When a defendant's prior unsatisfactory performance on probation or parole is established by his or her record of prior convictions, it seems beyond debate that the aggravating circumstance is included within the *Almendarez-Torres* exception and that the right to a jury trial does not apply." (*Ibid*.)[8]

These expansive readings of the *Almendarez-Torres* exception do not survive the high court's more recent pronouncements in *Erlinger*. Under the Sixth Amendment,

---

[7]  *McGee* held that the trial court does not run afoul of the Sixth Amendment by examining the record of a criminal conviction to "ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law." (*People v. McGee*, *supra*, 38 Cal.4th at p. 706.) We overruled *McGee* on that point in *People v. Gallardo* (2017) 4 Cal.5th 120, 124–125, 134–136.)

[8]  *Towne* reached a different conclusion when a finding of poor performance on probation or parole is based on evidence *other than* conviction of a new offense, such as a failed drug test or the failure to appear for appointments or attend counseling sessions. (*Towne*, *supra*, 44 Cal.4th at pp. 82–83.) It held that "the right to a jury trial applies to such [additional] factual determinations," which involve factfinding that is "very different from what ordinarily occurs in resolving the question of whether a defendant suffered a prior conviction." (*Id*. at pp. 82, 83.) That conclusion is consistent with *Erlinger* and today's holding.

Wiley was entitled to have a jury determine whether his prior convictions were of increasing seriousness and whether he had performed unsatisfactorily on probation, before the court could rely on those aggravating facts to find justification for an upper term sentence. We overrule *People v. Black*, *supra*, 41 Cal.4th 799 and *People v. Towne*, *supra*, 44 Cal.4th 63 to the extent they are inconsistent with today's holding.[9]

### B. *Section 1170(b)(3)'s Prior Conviction Exception*

We likewise hold that the trial court's factual findings exceeded the scope of the statutory exception to the jury trial right for prior convictions that appears in section 1170(b)(3). As noted, that subdivision authorizes the trial court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Ibid*.) Of course any state provision of this kind must comport with federal constitutional requirements, which *Erlinger* has now clarified.

The majority of appellate courts to consider this issue, including the Court of Appeal in this case, have construed the statutory jury trial exception as having the same scope as the *Almendarez-Torres* exception to the federal Constitution. (*People v. Morgan* (2024) 103 Cal.App.5th 488, 517–518, review

---

[9] In imposing an upper term sentence, the trial court in this case also noted that Wiley had been convicted of at least four prior felonies. (Cal. Rules of Court, rule 4.421(b)(2); see *Black*, *supra*, 41 Cal.4th at pp. 819–820 [holding that a finding of "numerous" prior convictions comes within the *Almendarez-Torres* exception].) Wiley has not challenged the trial court's purported reliance on this aggravating fact either in the Court of Appeal or in the briefing before us. Nor is it necessary for us to consider whether this numerical tally falls within the *Almendarez-Torres* exception in order to resolve the case.

granted Oct. 2, 2024, S286493 (*Morgan*); *Wiley*, *supra*, 97 Cal.App.5th at pp. 683–686; *Pantaleon*, *supra*, 89 Cal.App.5th at p. 938; *People v. Ross* (2022) 86 Cal.App.5th 1346, 1353, review granted Mar. 15, 2023, S278266, review dism. Apr. 30, 2025.) As discussed, at the time those cases were decided, the *Almendarez-Torres* exception for prior convictions was understood to include both "the fact that a prior conviction occurred" and "other related issues that may be determined by examining the records of the prior convictions." (*Black*, *supra*, 41 Cal.4th at p. 819.) Applying this precedent, the Courts of Appeal rejected the defendants' argument that section 1170(b)(3) should be construed *more narrowly* than its federal counterpart to apply only to the fact of a prior conviction. (*Morgan*, at p. 518; *Wiley*, at pp. 684–686.) These cases were correct in giving the constitutional and statutory exceptions the same scope. But, after *Erlinger*, the lower courts' ultimate conclusion as to the extent of that scope is not.

To avoid any application that would set section 1170(b)(3) at odds with the high court's constitutional interpretation, we interpret section 1170(b)(3)'s procedure in a manner that is coextensive with high court dictates. (*People v. Engram* (2010) 50 Cal.4th 1131, 1161.)[10] We disapprove *People v. Morgan*,

---

[10] Nor is there any longer a viable argument to construe the statute's exception more *narrowly* than the parallel exception under the Sixth Amendment. Before *Erlinger*, defendants had argued that the statute's exception applied only to the fact of a prior conviction, in the face of a broader construction of the federal constitutional exception for prior convictions. (*Morgan*, *supra*, 103 Cal.App.5th at p. 518; *Wiley*, *supra*, 97 Cal.App.5th at pp. 684–686.) But *Erlinger*'s holding aligns with the narrower view of the statute that those defendants espoused.

*supra*, 103 Cal.App.5th 488; *People v. Wiley*, *supra*, 97 Cal.App.5th 676; *People v. Pantaleon*, *supra*, 89 Cal.App.5th 932; and *People v. Ross*, *supra*, 86 Cal.App.5th 1346, to the extent they are inconsistent with today's holding.

In sum, a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements,[11] that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm. The proper procedure for adjudicating such aggravating facts is as follows: Defendants may assert the right to a jury trial, may waive jury in favor of a court trial, or may waive trial altogether. Subject to the standard rules of evidence both parties may stipulate to the admission of probation reports or other evidence bearing on a defendant's social and educational history, as well as other information relevant to sentencing, including criminal history. The burden is on the People to prove beyond a reasonable doubt the facts relied on to justify an upper term sentence. If those facts are properly proven, the court may take them into account and exercise its discretion under section 1170(b) to determine what sentence to impose, keeping in mind the statutory limits on upward departures from the midterm and the requirement for stating its reasons on the record. (§ 1170(b)(2), (5).)

---

Our finding that the federal constitution and the statute are coextensive forecloses both a broader and a narrower construction.

[11] As the high court has noted the trial court is entitled to consider so called "*Shepard* documents" as part of the limited consideration of a prior conviction and its elements. (*Erlinger*, *supra*, 602 U.S. at p. 839.)

### C. *The Failure to Afford Wiley a Jury Trial on Aggravating Facts Was Prejudicial*

When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman* standard of review. (*Lynch*, *supra*, 16 Cal.5th at pp. 742–743; *Chapman v. California* (1967) 386 U.S. 18.) Under that standard, "a sentence imposed under . . . section 1170(b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute." (*Lynch*, at p. 743; see also *Erlinger*, *supra*, 602 U.S. at pp. 849–850 (conc. opn. of Roberts, C. J.).) Lack of a jury trial is not harmless under *Chapman* if "the record contains evidence that could rationally lead to a contrary finding" with respect to the aggravating fact at issue. (*Neder v. United States* (1999) 527 U.S. 1, 19; accord, *In re Lopez* (2023) 14 Cal.5th 562, 581; *People v. Merritt* (2017) 2 Cal.5th 819, 832; *People v. Mil* (2012) 53 Cal.4th 400, 417 (*Mil*).)

Applying this standard, we conclude that failure to afford Wiley a jury trial on whether his prior convictions were of "increasing seriousness" (Cal. Rules of Court, rule 4.421(b)(2)) was prejudicial. A certified rap sheet from the California Law Enforcement Telecommunications System (CLETS), which was

admitted into evidence at Wiley's sentencing hearing,[12] reveals the following criminal history:

1998 conviction for driving at an unsafe speed, an infraction, which resulted in a fine. (Veh. Code, § 22350.)

1998 conviction for possession of marijuana, a felony in 1998 but now an infraction (Health & Saf. Code, § 11357, subd. (a)); and a

1998 conviction for attempted theft, a misdemeanor (§§ 484, subd. (a), 664). For these two offenses, Wiley was ordered to serve a five-year probationary term.

2002 conviction for reckless driving, a misdemeanor, resulting in a three-year probationary term. (Veh. Code, § 23103.)

2003 conviction for driving with a suspended license, a misdemeanor[13] (Veh. Code, § 14601, subd. (b)(2)); and a

---

[12] The fact that Wiley does not challenge the certified rap sheet's admissibility makes it unnecessary for us to consider that point. (See generally *People v. Martinez* (2000) 22 Cal.4th 106, 113, 119–134; *People v. Morris* (2008) 166 Cal.App.4th 363, 367, 370–373; *People v. Dunlap* (1993) 18 Cal.App.4th 1468, 1476–1481; Evid. Code, § 1280.) Wiley does observe that such records can be confusing and even erroneous. Indeed, the CLETS rap sheet in this case contains an error. (See fn. 13, *post*.) We held in *Martinez* that such errors " ' "may be developed on cross-examination and should not affect the admissibility of the [record] itself." ' " (*Martinez*, at p. 132.) Ultimately, the high court stressed the limitations of this type of documentary evidence as one reason for requiring a contested jury trial on findings of fact that go beyond the existence of a criminal conviction and its underlying elements. (*Erlinger, supra*, 602 U.S. at pp. 839–842 & fn. 3.)

[13] The CLETS rap sheet incorrectly describes this offense as an infraction.

2003 conviction for driving under the influence, a misdemeanor (Veh. Code, § 23152, subd. (b)). For these two offenses, Wiley was ordered to serve a five-year probationary term.

2005 conviction for knowingly driving with a suspended license, a misdemeanor (Veh. Code, § 14601.5, subd. (a)); and a

2005 conviction for driving under the influence with prior offenses, a felony (Veh. Code, §§ 23152, subd. (a), 23550, subd. (a)). For these two offenses, Wiley was ordered to serve a three-year probationary term.

2009 conviction for possession of a controlled substance, a felony in 2009 but now a misdemeanor (Health & Saf. Code, § 11377, subd. (a)); and a

2009 conviction for driving with knowledge of a suspended license, a misdemeanor (Veh. Code, § 14601.1, subd. (a)). For these two offenses, Wiley was ordered to serve a three-year probationary term.

2015 conviction for possession of a controlled substance, a misdemeanor, resulting in a one-year jail term. (Health & Saf. Code, § 11377, subd. (a).)

2015 conviction for making a space available for the manufacture or distribution of a controlled substance, a felony (Health & Saf. Code, § 11366.5, subd. (a)); and a

2015 conviction for unlawful possession of ammunition by a felon, a felony (§ 30305, subd. (a)(1)). For these two offenses, Wiley was ordered to serve a three-year probationary term.

2016 conviction for sale of marijuana, a felony in 2016, now a misdemeanor (Health & Saf. Code, § 11360, subd. (a)); and a

2016 conviction for transportation of a controlled substance for sale, a felony (Health & Saf. Code, § 11379, subd.

(a)).  For each of the 2016 offenses, Wiley was ordered to serve four years in prison, with the sentences to run concurrently.

2018 conviction for possession of marijuana for sale, a misdemeanor, resulting in a two-year probationary term. (Health & Saf. Code, § 11359, subd. (b).)

2020 conviction for criminal threats, a felony, resulting in a three-year prison term with imposition of sentence suspended and a three-year term of probation.  (§ 422.)

The Attorney General argues that the progression of Wiley's offenses over time from misdemeanors to felonies demonstrates a clear trend from less serious offenses towards more serious ones.  That may be.  But a rational juror may not have been persuaded beyond a reasonable doubt by that fact alone.  Given that Wiley's criminal record began as a young adult and spanned two decades, we cannot discount the possibility that, in making the determination as to increasing seriousness, a rational juror could have either placed greater emphasis on his felony offenses, or on his more recent criminal history.

As for Wiley's felony offenses, none is strikingly more serious than the others, either by reference to the nature of the offense or the punishment.  The majority of Wiley's felony offenses were drug-related and exposed Wiley to a sentencing range of 16 months, two or three years.  (See §§ 18, 1170, subd. (h)(1).)  His 2015 conviction for unlawful possession of ammunition was punishable alternatively as a felony or misdemeanor, and carried the standard default felony range of 16 months, two or three years.  (§ 30305, subd. (a)(2).)  The conviction with the longest sentence exposure was his 2016 conviction for transporting a controlled substance, carrying a potential two-, three- or four-year term.  (Health & Saf. Code,

§ 11379, subd. (a).) Two crimes followed in 2018 and 2020. A misdemeanor marijuana offense carried a six-month maximum jail term (Health & Saf. Code, § 11359, subd. (b)), and a felony criminal threats offense, an alternative felony/misdemeanor, involved a 16 month, two- or three-year prison exposure. (§ 422.) A jury considering this criminal history could have disagreed as to whether it demonstrated criminal conduct of increasing seriousness. We do not suggest that one conclusion is more reasonable or more likely than the other, only that a rational juror could conclude that the People had not proved beyond a reasonable doubt that Wiley's convictions were of increasing seriousness.

The Attorney General counters that Wiley's 2020 conviction for making a criminal threat was his most serious offense when considering the range of punishment (see *Black*, *supra*, 41 Cal.4th at p. 820) because it is classified as a serious felony that carries additional penalties if Wiley commits certain new offenses. (See §§ 667, subd. (a)(1) [five-year enhancement], 667, subds. (b)–(i) ["Three Strikes Law"], 1192.7, subd. (c) [serious felony defined].) The serious felony designation and the future consequences, he reasons, "demonstrate the Legislature's current assessment that criminal threats is deserving of special treatment and enhanced deterrence not afforded to nonserious crimes . . . ." In his estimation, this classification outweighs the consideration noted above that Wiley's 2016 transportation conviction is a nonreducible felony that carries a longer sentencing potential than his 2020 criminal threats conviction. (Compare Health & Saf. Code, § 11379, subd. (a) with Pen. Code, §§ 422, subd. (a), 1170, subd. (h)(1).) Even accepting the Attorney General's argument that the designation of an offense as a serious felony is a relevant consideration, it is simply one

factor the jury could have considered when evaluating whether Wiley's crimes were of increasing seriousness. Its relevance as a factor underscores that the determination is a comparative and qualitative one. These realities make it " ' "difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." ' " (*Lynch*, *supra*, 16 Cal.5th at p. 775.)

In short, while the evidence may have been sufficient to support a finding of increasing seriousness, that is not the proper inquiry when assessing prejudice under *Chapman*. (*Mil*, *supra*, 53 Cal.4th at p. 418.) Instead, we must ask "whether any rational fact finder could have come to the *opposite* conclusion." (*Ibid*.) A rational juror could have reached the opposite conclusion here based on the totality of Wiley's criminal conduct and the applicable sentences for those transgressions. Accordingly, we cannot conclude beyond a reasonable doubt that a properly instructed jury would have found Wiley's criminal convictions were of increasing seriousness.

Similarly, we conclude that the failure to conduct a jury trial on the second aggravating fact, unsatisfactory performance on probation (Cal. Rules of Court, rule 4.421(b)(5)), was prejudicial. Evidence presented at the sentencing hearing was admitted without objection in the form of a probation report,[14] which recited Wiley's performance on probation in three cases. In one case, Wiley successfully completed a residential drug treatment program, obtained his driver's license, paid all court

---

[14] In imposing sentence, the trial court considered the probation report and here both parties rely on it to assess prejudice. We do so as well. (But see fn. 5, *ante*.)

ordered fines and fees, and committed no probation violations. In two other cases, Wiley's performance on probation was "marked by probation violations due to his arrest and conviction of new misdemeanor and felony law violations." Probation was revoked and a prison term was executed. After his release from prison on post release community supervision, Wiley was convicted of a new misdemeanor offense, but "was fairly compliant during the remainder of his supervision term . . . ."

The Attorney General argues that, "[b]ecause committing an offense on probation is such a clear violation of both the letter and spirit of probation's strictures, no rational jury could conclude that a defendant who committed crimes two out of the three times that he was on formal probation had performed satisfactor[ily] on probation." However, the probation officer's assessment in this case demonstrates that the record is also open to a different interpretation. She characterized Wiley's mixed performance on probation as *both* an aggravating factor *and* a mitigating factor. Given this assessment, we cannot discount the possibility that either counsel in a contested jury trial might have presented live testimony on this factor that would have affected the jury's determination. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 839–840.) Nor can we discount the possibility that a rational jury could have disagreed as to whether the People had proved that Wiley's *overall performance* on probation was unsatisfactory. Accordingly, we cannot conclude the deprivation of a jury trial was harmless beyond a reasonable doubt.[15]

---

[15]     This conclusion makes it unnecessary for us to consider Wiley's additional argument that he is entitled to a remand

25

### III.  DISPOSITION

We reverse the judgment of the Court of Appeal insofar as it affirmed Wiley's sentence.  We remand to the Court of Appeal with directions to return the case to the trial court for further proceedings in accordance with this opinion.

**CORRIGAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**GROBAN, J.**
**EVANS, J.**

---

under *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 because the trial court failed to appreciate the limitations on its discretion to impose an upper term sentence under section 1170(b)(1) and (2).

PEOPLE v. WILEY

S283326

Concurring Opinion by Justice Kruger

After Eric Wiley pleaded guilty to making a criminal threat (Pen. Code, § 422), the trial court found multiple aggravating circumstances and determined that these circumstances warranted an upper term sentence.  The court cited three circumstances in particular, all related to Wiley's criminal history:  his "prior convictions, poor performance on probation, and the fact that the charges are becoming more serious."  (See Cal. Rules of Court, rule 4.421(b)(2)–(5).)

Consistent with the constitutional holding in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), the majority today concludes that the Fifth and Sixth Amendments entitled Wiley to a jury determination of whether his probation performance was indeed "poor" and whether his crimes were indeed becoming increasingly "serious."  (See maj. opn., *ante*, at pp. 4–5, 11–14.)  I agree with the majority that Wiley was entitled to a jury determination on these questions.  But for the reasons I explained in *Lynch*, I do not think this is a constitutional issue.  (*Lynch*, *supra*, 16 Cal.5th at pp. 779–787 (conc. & dis. opn. of Kruger, J.).)  Wiley's right to a jury determination on these aggravators stems not from the Fifth or Sixth Amendment, but instead from the Legislature's considered decision to expand the jury right beyond its traditional bounds, to encompass the full range of qualitative, comparative determinations that have

1

historically informed judges' exercise of their sentencing discretion.

To briefly review:  In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), and follow-on cases, the high court has distinguished between the right to have a jury determine (1) facts that increase the sentence range prescribed by statute, and (2) facts that a judge may rely on in exercising its discretion to select the appropriate sentence within the statutorily prescribed range.  These two functions are "analytically distinct" (*People v. Black* (2007) 41 Cal.4th 799, 815 (*Black*)) and the high court has consistently made clear that the constitutional jury right attaches only to the former.  *Apprendi* expressly acknowledges that judges retain their historical discretion to "tak[e] into consideration various factors relating both to offense and offender" in imposing judgment within a prescribed range. (*Apprendi*, at p. 481; accord, e.g., *Dillon v. United States* (2010) 560 U.S. 817, 828–829.)

*Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*), on which the majority heavily relies, preserves this essential distinction.  *Erlinger* reiterates that "[v]irtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)."  (*Id.* at p. 834, quoting *Apprendi*, *supra*, 530 U.S. at p. 490.)  But as Justice Jackson explained in dissent, under this rule "the judge continues to be the sole decisionmaker with respect to determining the facts she will rely upon to sentence within the typically broad statutory sentencing range." (*Id.* at p. 833 (dis. opn. of Jackson, J.).)

2

In this case, the aggravating circumstances we're concerned with — Wiley's poor probation performance and the increasing seriousness of his offenses — did not increase the prescribed range of penalties to which Wiley was exposed. That is because there was at least one other aggravating circumstance that independently rendered him eligible for an upper-term sentence:  the simple fact of his prior convictions. No one disputes that the fact of Wiley's prior convictions was established in accordance with *Apprendi* and its progeny, which contains an exception permitting judges to find that the defendant has suffered prior convictions.  In my view, this is all the Constitution requires.

I recognize, however, that a majority of my colleagues decided otherwise in *Lynch*, based on their understanding of the interaction between *Apprendi* and the current version of Penal Code section 1170, subdivision (b)(2), as it was amended by the Legislature in 2022.  And ultimately, much as in *Lynch*, I do not think this point makes any practical difference.  Even if the Constitution does not guarantee a jury trial on the full range of aggravating circumstances that might inform an exercise of sentencing discretion, statutory law certainly does:  The current version of Penal Code section 1170, subdivision (b)(2) unquestionably extends a statutory jury right to every aggravating circumstance upon which a trial court relies in imposing an upper-term sentence.  (See *Lynch*, *supra*, 16 Cal.5th at pp. 755–767.)

Regardless of whether it applies of its own force, *Apprendi* is relevant here because Penal Code section 1170, subdivision (b)(2), as amended, statutorily extends the reach of the *Apprendi* rule.  As a result, absent waiver, *all* aggravating circumstances a trial court relies on in imposing an upper-term sentence —

whether or not they are legally necessary to impose such a sentence — must be either stipulated to by the defendant or proved by a jury beyond a reasonable doubt.  And I agree with the majority that the scope of Penal Code section 1170, subdivision (b)(3), which provides an exception to this jury trial right for "the defendant's prior convictions," tracks the scope of the prior-conviction exception set forth in *Almendarez-Torres v. United States* (1998) 523 U.S. 224.  As such, the prior-conviction exception is limited to " 'determin[ing] what crime, with what elements, the defendant was convicted of.' "  (*Erlinger*, *supra*, 602 U.S. at p. 838, quoting *Mathis v. United States* (2016) 579 U.S. 500, 511–512; see maj. opn., *ante*, at pp. 16–17.)

Whether Wiley performed unsatisfactorily on probation, and whether his prior convictions were of increasing seriousness, may not be what we typically think of as sentencing "facts"; they are, rather, qualitative judgments about the offense and the offender of the sort that have traditionally been reserved for a judge's consideration in determining whether to impose an otherwise authorized upper-term sentence.  (See *Black*, *supra*, 41 Cal.4th at p. 813.)  But under the rule established by Penal Code section 1170, subdivision (b), this is irrelevant; all that matters is that, to find the existence of these criminal-history-related aggravators, the trial court "had to do more than identify his previous convictions and the legal elements required to sustain them."  (*Erlinger*, *supra*, 602 U.S. at p. 838; see maj. opn., *ante*, at pp. 11–14.)

I agree with the majority that the trial court's error was prejudicial under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 22.  But for the same reasons given by the majority, I would also conclude that the error was prejudicial under the *People v. Watson* (1956) 46 Cal.2d 818, 836 reasonable probability standard we apply to state law errors.

There was a reasonable probability that the outcome would have been different had the trial court not relied on the aggravating circumstances at issue or had those circumstances been submitted to a jury. (See maj. opn., *ante*, at pp. 19–25.)

With these observations, I concur in the majority's decision.

**KRUGER, J.**

**I Concur:**

**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Wiley

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 97 Cal.App.5th 676
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S283326
**Date Filed:** June 26, 2025

_____

**Court:** Superior
**County:** Humboldt
**Judge:** Kaleb V. Cockrum

_____

**Counsel:**

J. Bradley O'Connell, under appointment by the Supreme Court, and Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Michael R. Johnsen, Eric D. Share, Seth K. Schalit and Brady Baldwin, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

J. Bradley O'Connell
First District Appellate Project
1212 Broadway, Suite 1200
Oakland, CA 94612
(415) 495-3119

Brady Baldwin
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94110
(415) 510-3470